[No. D060519. Fourth Dist., Div. One. Aug. 9, 2012.]

TRULY NOLEN OF AMERICA, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
ALVARO MIRANDA et al., Real Parties in Interest.

490

## COUNSEL

Atkinson, Andelson, Loya, Ruud & Romo, Ronald W. Novotny and Michael D. Drenan for Petitioner.

No appearance for Respondent.

Blumenthal & Nordrehaug, Norman B. Blumenthal, Kyle R. Nordrehaug; Dychter Law Offices and Alexander I. Dychter for Real Parties in Interest.

## OPINION

**HALLER, J.**—Alvaro Miranda and Danny Luna filed a class action complaint against Truly Nolen of America (Truly Nolen) alleging violations of California's wage and hour laws. Truly Nolen moved to compel arbitration of the claims under arbitration agreements signed by the parties and requested that the court order plaintiffs to arbitrate on an individual and not a class basis. The arbitration agreements did not contain a specific provision pertaining to the availability or unavailability of classwide arbitration. After briefing

and a hearing, the court granted the motion to compel arbitration, but rejected Truly Nolen's request that the court order individual arbitration, relying on *Gentry v. Superior Court* (2007) 42 Cal.4th 443 [64 Cal.Rptr.3d 773, 165 P.3d 556] (*Gentry*).

Truly Nolen filed a writ of mandate petition challenging the court's refusal to order individual arbitration. We issued an order to show cause and provided the parties the opportunity to submit supplemental briefing. In its briefs, Truly Nolen contended the court erred in relying on *Gentry* because *Gentry* has been overruled by the United States Supreme Court in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [179 L.Ed.2d 742, 131 S.Ct. 1740] (*Concepcion*) and, even if *Gentry* remains viable, the factual record did not support the application of the *Gentry* factors in this case. Plaintiffs countered that *Concepcion* did not overrule *Gentry*, and substantial evidence supported the trial court's decision that *Gentry* applied in the case. Plaintiffs raised numerous additional arguments, many of which were never raised before the trial court.

Although *Concepcion*'s reasoning strongly suggests that *Gentry*'s holding is preempted by federal law, the United States Supreme Court did not directly rule on the class arbitration issue in the context of unwaivable statutory rights and the California Supreme Court has not yet revisited *Gentry*. Thus, we continue to be bound by *Gentry* under California's stare decisis principles. However, we conclude the trial court's application of the *Gentry* elements was unsupported on the factual record before it.

In reaching these conclusions, we recognize the court did not address one foundational matter: whether the parties impliedly agreed in their arbitration contract to permit class arbitration. As explained below, if such an agreement existed, there would be no need to reach the *Gentry* issues and a court order refusing to require individual arbitration would have been warranted. Although plaintiffs did not specifically raise this issue in the trial court, we shall remand the matter to the trial court and allow the parties to submit additional evidence and/or argument on this issue.

We thus grant Truly Nolen's petition and order the trial court to (1) vacate the portion of the order denying Truly Nolen's motion to order individual arbitration and (2) provide the parties the opportunity to submit additional evidence and/or argument on the issue of whether the arbitration contract reflects a mutual intent to permit classwide arbitration. Based on the trial court's review of this evidence, the court should enter a new order as outlined in the Conclusion below.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2011, plaintiffs filed a complaint against Truly Nolen seeking relief on behalf of themselves and a class of similarly situated current and former California employees. Plaintiffs alleged that Truly Nolen, a nationwide provider of pest control services, violated California's wage and hour laws. Plaintiff Miranda alleged that he is employed as a nonexempt pest control technician at Truly Nolen. He began his employment in 1995 and worked at Truly Nolen until approximately 1999, and then was reemployed from August 2006 through the present date. Plaintiff Luna alleged he was formerly employed by Truly Nolen as a nonexempt pest control technician. He began his employment in approximately April 2005 and left the company in approximately May 2010.

Plaintiffs identified two classes of similarly situated persons: (1) current pest control technician employees who worked for Truly Nolen since April 21, 2007, and (2) former pest control technician employees whose employment ended since April 21, 2008. The complaint alleged six causes of action: (1) failure to pay straight time and overtime wages; (2) failure to provide meal periods; (3) failure to allow rest periods; (4) failure to pay all wages owed upon termination; (5) failure to provide accurate itemized wage statements; and (6) unfair competition.

About one month after plaintiffs filed their complaint, Truly Nolen petitioned for an order directing plaintiffs to submit their claims to binding arbitration under the parties' written arbitration agreements, and to stay the action pending the completion of arbitration. In support, Truly Nolen submitted evidence showing that both plaintiffs signed a written agreement to submit employment disputes to binding arbitration. Luna signed the agreement in April 2005, and Miranda signed the agreement in August 2006.

The arbitration agreement is part of a document titled "The 'RESOLVE' Program," which details Truly Nolen's conflict resolution policies and contains four mandatory dispute resolution steps: (1) discussions with the employee's immediate manager; (2) human resources involvement; (3) mediation; and (4) binding arbitration. The one-page arbitration agreement contains provisions describing the broad scope of the claims subject to the arbitration requirement, the manner in which an arbitration may be requested, and the governing procedures for the arbitration proceeding.

Of relevance here, the agreement states that all specified employment-related claims "will be resolved by Binding Arbitration administered by the American Arbitration Association (hereafter known as 'AAA'), under its National Rules for the Resolution of Employment Disputes, including its

Optional Rules for emergency measures of protection. . . . The Arbitrator may grant any remedy or relief that the Arbitrator deems just and equitable, including any remedy that would have been available if the matter had been heard in court." The agreement further provides: "By signing the acceptance form and accepting or continuing employment, the [employee] voluntarily, knowingly and intelligently waives any right he or she may have to seek remedies in court, including the right to a jury trial. However, the arbitration process is less formal, less expensive and less time-consuming than traditional litigation, and the proceedings are not open to the public."

The arbitration agreement also states that Truly Nolen "will not retaliate or take any adverse action against [employees] because of their reporting to a state or federal agency or their request for arbitration." Under the agreement, all administrative expenses (including arbitrator fees) are borne by Truly Nolen, except for a $50 filing fee. Each party is initially responsible for his or her attorney fees, subject to an attorney fees award by the arbitrator under applicable law. The agreement additionally states: "If [an employee] chooses not to have legal counsel present at the arbitration hearing, then Truly Nolen will not have legal counsel present at the hearing."

In moving to compel arbitration under this agreement, Truly Nolen argued that plaintiffs' claims are within the scope of the arbitration provisions, the agreements are governed by the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.), and the FAA requires enforcement of plaintiffs' agreements to arbitrate these disputes. Truly Nolen additionally requested "that arbitration be ordered as an individual as opposed to a collective basis" under the United States Supreme Court's recent decisions in *Concepcion* and *Stolt-Nielsen*. (*Concepcion, supra*, 563 U.S. ___ [131 S.Ct. 1740]; *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662 [176 L.Ed.2d 605, 130 S.Ct. 1758] (*Stolt-Nielsen*).) Truly Nolen argued it could not be compelled to submit to classwide arbitration because the arbitration agreements did not contain a contractual basis for authorizing class arbitration.

Plaintiffs opposed the arbitration request, arguing the arbitration agreement was procedurally and substantively unconscionable under California contract law. In support, they submitted their declarations stating that Truly Nolen managers did not explain the meaning of binding arbitration and plaintiffs did not understand the effect of signing the arbitration agreement when they signed it. Plaintiffs also stated that during their employment they made numerous complaints to their branch manager about wage and hour issues, and they were never told they were required to attend mediation or arbitration. Based on this and other similar evidence, plaintiffs argued the arbitration

agreement was a "procedurally unconscionable contract of adhesion presented . . . on a take-it-or-leave-it basis" and the agreement was substantively unconscionable because "the practical effect of the agreement is one-sided . . . ."

Plaintiffs alternatively argued that if the court granted Truly Nolen's motion to compel arbitration, the court should deny Truly Nolen's request that the arbitration be conducted on an individual (not a class) basis. Citing the California Supreme Court's *Gentry* decision, plaintiffs maintained that a court must grant arbitration on a classwide basis for wage and hour claims if four factors are present in the case: a small disputed monetary amount, the potential for retaliation, the absent class members' lack of knowledge of their rights, and other policy reasons preventing a complete vindication of the employees' statutory rights. (See *Gentry, supra,* 42 Cal.4th at p. 463.) To show the existence of these factors in this case, plaintiffs submitted the declarations of two of their attorneys, Norman Blumenthal and Christopher Olsen, each of whom said he has substantial experience in representing employees in wage and hour class actions. As detailed below, these attorneys described the various policy rationales supporting classwide arbitration and the disadvantages arising when employees are required to individually arbitrate their wage and hour claims, but neither counsel related these policy rationales to plaintiffs' claims or to the specific factual situation underlying the claims. Plaintiffs also argued that an order requiring individual arbitration would violate the National Labor Relations Act (29 U.S.C. § 151 et seq.).

In reply, Truly Nolen objected to plaintiffs' evidence and addressed each of plaintiffs' arguments. With respect to the *Gentry* issue, Truly Nolen argued (1) *Gentry* does not apply because there is no class action waiver provision in the agreement; (2) plaintiffs' arguments are "foreclosed by the Supreme Court's decision in *Stolt-Nielsen*" because *Stolt-Nielsen* precludes class action arbitration unless both parties have agreed to the procedure; and (3) *Gentry* is no longer valid law after *Concepcion.*

The trial court initially issued a tentative ruling that it would grant Truly Nolen's petition to compel arbitration, but would not order the arbitration to proceed on an individual basis because *Gentry* applied to permit class arbitration. During the hearing on the matter, Truly Nolen's counsel reasserted arguments based on *Stolt-Nielsen* and challenged *Gentry*'s continuing viability, and also argued that even assuming *Gentry* remained applicable, plaintiffs failed to present sufficient evidence to show the *Gentry* factors are applicable in the case. Truly Nolen's counsel maintained that the declarations submitted by plaintiffs were too general and plaintiffs had made no attempt to apply the *Gentry* factors to the specific facts of the case. Plaintiffs' counsel did not attempt to counter these arguments, nor did he argue that the

arbitrator, not the court, should decide whether the contract permitted class arbitration. Instead he said he was submitting on the court's ruling.

The court then issued a final minute order. In the order, the court rejected plaintiffs' arguments that they cannot be compelled to arbitrate because they did not read or understand the agreement or that the agreement was unfairly one sided. The court thus found the record was insufficient to show the agreement was procedurally or substantively unconscionable under California contract law.[1]

The trial court next addressed the parties' arguments based on the *Gentry* decision. The court found that *Gentry* remains controlling California law under the stare decisis doctrine, relying on *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489 [128 Cal.Rptr.3d 854] (*Brown*). The court also concluded that *Gentry* applies even though there was no specific class action waiver in the arbitration agreement because the practical effect was the same whether there was an express waiver or the agreement was silent on the issue. The court further found plaintiffs met their burden to satisfy the *Gentry* test, relying mainly on the policy discussion in the *Gentry* decision and plaintiffs' counsel's declarations that supported and/or were consistent with these policies.

Truly Nolen petitioned for a writ of mandate in this court, challenging the court's refusal to order the arbitration to proceed on an individual (not class) basis. We issued an order to show cause and stayed the arbitration. The parties then filed extensive writ briefing. After filing these briefs, the parties have continued to submit new federal and state authority in this rapidly evolving area of the right to classwide arbitration in wage and hour litigation under the FAA and under California law.

## DISCUSSION

### I. *FAA Preemption*

■ It is undisputed that plaintiffs' arbitration agreements are governed by the FAA. Congress long ago enacted the FAA "in response to widespread judicial hostility to arbitration agreements" (*Concepcion, supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1745]), and to "ensure that private arbitration agreements are enforced according to their terms." (*Id.* at p. ___, fn. 6 [131 S.Ct. 1750, fn. 6]; see *CompuCredit Corp. v. Greenwood* (2012) 565 U.S. ___, ___–___ [181 L.Ed.2d 586, 132 S.Ct. 665, 668–669] (*CompuCredit*).)

---

[1] Because this conclusion is not challenged in this writ proceeding, we do not further discuss this unconscionability issue in this opinion.

The FAA "incorporates a strong federal policy of enforcing arbitration agreements, including agreements to arbitrate statutory rights." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 96–97 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).) California law similarly reflects a strong policy in favor of arbitration. (*Id.* at p. 97; *Epitech, Inc. v. Kann* (2012) 204 Cal.App.4th 1365, 1371 [139 Cal.Rptr.3d 702].)

Section 2 of the FAA provides that state laws inconsistent with the federal act's provisions and objectives are preempted. (*Perry v. Thomas* (1987) 482 U.S. 483, 489 [96 L.Ed.2d 426, 107 S.Ct. 2520].) Under this rule, a state law contract defense is unenforceable if it applies only to arbitration or if it derives its meaning from the fact that an agreement to arbitrate is at issue. (*Concepcion, supra,* 563 U.S. at p. ___ [131 S.Ct. at p. 1746].) However, because Congress has not completely displaced state regulation in the area of arbitration, state laws regarding arbitration are enforceable to the extent they are not in conflict with the FAA.

## II. *Summary of California Law Before* Stolt-Nielsen *and* Concepcion

### A. Keating

■ More than 30 years ago, the California Supreme Court held a court may order classwide arbitration in appropriate cases. (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 608–614 [183 Cal.Rptr. 360, 645 P.2d 1192], overruled on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852].) As in this case, the arbitration agreement in *Keating* had no specific provision permitting or precluding classwide arbitration, but the high court held that a trial court has the discretionary authority to order classwide arbitrations where the interests of justice would be served. (*Keating,* at pp. 613–614.) The *Keating* court reasoned that because arbitration clauses frequently appear in standardized contracts of adhesion, "[i]f . . . an arbitration clause may be used to insulate the drafter of an adhesive contract from any form of class proceeding, . . . it may well be oppressive and may defeat the expectations of the nondrafting party." (*Id.* at p. 610.) After *Keating,* class arbitration became a "well[-]accepted" method for resolving disputes in California. (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 152 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*); see *Sanders v. Kinko's, Inc.* (2002) 99 Cal.App.4th 1106, 1110 [121 Cal.Rptr.2d 766] ["[i]t is now well established a California court may order classwide arbitration in appropriate cases"]; *Blue Cross of California v. Superior Court* (1998) 67 Cal.App.4th 42, 52–53 [78 Cal.Rptr.2d 779].)

## B. Armendariz

■ Eighteen years after *Keating* was decided, the California Supreme Court considered various issues regarding the enforceability of mandatory employment arbitration agreements in a statutory wrongful termination case. (*Armendariz, supra*, 24 Cal.4th 83.) The *Armendariz* court held that state statutes do not prohibit mandatory employment arbitration agreements, but concluded that arbitration agreements encompassing "*unwaivable* statutory rights must be subject to particular scrutiny." (*Id.* at p. 100.) Specifically, the court held that to ensure mandatory arbitration agreements are not used to curtail an employee's statutory rights that cannot be waived, five minimum requirements (the *Armendariz* requirements) must be present to ensure that arbitration will not be used "as a vehicle for the waiver of [the] statutory rights." (*Id.* at p. 101; see *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 712–713 [13 Cal.Rptr.3d 88].) These requirements include neutral arbitrators, discovery, a written award, availability of relief that would otherwise be available in court, and no additional costs for employees. (*Armendariz, supra*, at pp. 102–113; *Fitz, supra*, 118 Cal.App.4th at pp. 712–713.)

■ The *Armendariz* court additionally held that even if an arbitration agreement contains these requirements, a court may refuse to enforce the agreement if the plaintiff shows the agreement is procedurally and substantively unconscionable. (*Armendariz, supra*, 24 Cal.4th at pp. 113–114.) Under *Armendariz*, "[t]he doctrine of unconscionability contains two components: procedural unconscionability and substantive unconscionability. Procedural unconscionability focuses on 'oppression' or 'surprise' due to unequal bargaining power. [Citation.] The procedural element generally takes the form of an adhesion contract, which ' "imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." ' [Citation.] Substantive unconscionability . . . focuses on overly harsh or one-sided results. [Citation.] . . . [¶] Both procedural and substantive elements of unconscionability must be present for a court to refuse to enforce an arbitration agreement. [Citation.] . . . . Generally a sliding scale approach is taken; that is, 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Fitz v. NCR Corp., supra*, 118 Cal.App.4th at pp. 713–714.)

## C. Discover Bank

Three years after *Armendariz* was decided, the California Supreme Court considered an issue unaddressed in *Keating*—whether a "class action waiver may be unenforceable as contrary to public policy or unconscionable." (*Discover Bank, supra*, 36 Cal.4th at p. 158.) In *Discover Bank*, a credit card

holder filed a class action complaint alleging Discover Bank improperly imposed a late fee on payments received after a specific time. (*Id.* at p. 154.) The plaintiffs' claims did not arise from unwaivable statutory rights. (*Id.* at p. 160.) The parties' arbitration agreement contained an express waiver of the right to proceed by class action in arbitration. (*Id.* at pp. 153–154.)

In determining whether the class action waiver provision was enforceable, the *Discover Bank* court initially discussed the important public policy justifications for class action lawsuits, emphasizing the role of class actions in deterring and redressing wrongdoing and vindicating rights asserted by large groups of persons, and the "important role of class action remedies in California law" that led the court to approve of the classwide arbitration procedure in *Keating*. (*Discover Bank, supra,* 36 Cal.4th at pp. 156–157; see *Keating, supra,* 31 Cal.3d at pp. 608–614.) The *Discover Bank* court then stated that the specific issue before it—the enforceability of the class action waiver—was not controlled by the *Armendariz* court's discussion of the five *Armendariz* requirements because the court was not addressing a statutory claim containing an antiwaiver provision. (See *Discover Bank, supra,* 36 Cal.4th at p. 160; *Armendariz, supra,* 24 Cal.4th at pp. 100–101.)

But the *Discover Bank* court found the unconscionability doctrine discussed in the second part of *Armendariz* (procedural and substantive unconscionability) was applicable to the issue whether the express class action waiver was enforceable. (*Discover Bank, supra,* 36 Cal.4th at pp. 160–163.) Specifically, the court found that class action waivers in consumer adhesion contracts commonly have both aspects of unconscionability. (*Id.* at pp. 161–162.) With respect to the procedural unconscionability element, the court stated that a class action waiver is often contained in a " 'bill stuffer' " which the consumer is required to accept or close his or her account. (*Id.* at p. 160.) With respect to substantive unconscionability, the court noted that class action waivers "are indisputably one-sided" because businesses have no need to bring a class action against a consumer. (*Id.* at p. 161.)

Based on these findings, the *Discover Bank* court concluded that most class action waiver provisions in consumer contracts of adhesion are unconscionable and thus unenforceable. (*Discover Bank, supra,* 36 Cal.4th at pp. 162–163.) Specifically, the court held class action waivers should not be enforced if the "waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money . . . ." (*Ibid.*)

The court reasoned that under such circumstances, the waiver is unconscionable because it "becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' " (*Id.* at p. 163.)

In establishing this broad rule of unenforceability of class action waivers, the *Discover Bank* court rejected the defendant's argument that the court's holding was preempted by the FAA, finding that its unconscionability rule does not single out arbitration agreements. The court stated that " '[u]nder section 2 of the FAA, a state court may refuse to enforce an arbitration agreement based on "generally applicable contract defenses, such as fraud, duress, or unconscionability." ' . . . In the present case, the principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory is a principle of California law that does not specifically apply to arbitration agreements, but to contracts generally." (*Discover Bank, supra*, 36 Cal.4th at p. 165, citation omitted.)

### D. Gentry

Two years later, the California Supreme Court decided *Gentry, supra*, 42 Cal.4th 443. In *Gentry*, the plaintiff brought a class action against his employer alleging violation of various Labor Code provisions that contain unwaivable statutory rights, including overtime rules. (*Id.* at pp. 455–456; see Lab. Code, § 1194.) The issue before the high court concerned the enforceability of an express provision in an arbitration agreement waiving the employee's rights to a class action for these statutory employment claims. (*Gentry, supra*, at p. 450.)

In resolving this issue, the *Gentry* court rejected the employer's argument that the class action waiver provision was *enforceable* under *Discover Bank* because the amounts at issue were not necessarily "minuscule" as is typical in consumer class actions. (*Gentry, supra*, 42 Cal.4th at p. 457.) The court explained that *Discover Bank* was a specific application of the state's general contractual unconscionability principles, and it did not hold that consumer actions were the only actions in which classwide arbitration waivers would not be enforced. (*Gentry, supra*, at p. 457.) The court then stated it found persuasive the employee's argument that class action waivers may be invalid in wage and hour cases because they would frequently have "a *similar* exculpatory effect . . . and would therefore undermine the enforcement of the statutory right to overtime pay." (*Ibid.*, italics added.) The court relied primarily on *Armendariz*'s reasoning that " 'arbitration cannot be misused to accomplish a de facto waiver . . .' " of unwaivable statutory rights. (*Gentry, supra*, at p. 457; see *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076 [130 Cal.Rptr.2d 892, 63 P.3d 979] [adopting *Armendariz* reasoning].) The

*Gentry* court also reiterated its conclusion in *Armendariz* that "for public policy reasons we will not enforce provisions contained within arbitration agreements that pose significant obstacles to the vindication of employees' statutory rights." (*Gentry, supra,* at p. 463, fn. 7.)

Although making clear that it was not holding that "all class arbitration waivers in overtime cases are unenforceable," the *Gentry* court concluded that "when it is alleged that an employer has systematically denied proper overtime pay to a class of employees and a class action is requested notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial court must consider [certain specified] factors . . . ." (*Gentry, supra,* 42 Cal.4th at pp. 462–463.) The four factors are: (1) the modest size of the potential individual recovery; (2) the potential for retaliation against members of the class; (3) the fact that absent class members may be ill informed about their rights; and (4) other real-world obstacles to the vindication of class members' statutory rights. (*Id.* at p. 463.) The California Supreme Court held that if the "trial court determines, based on [these] factors . . . , *that class arbitration would be a significantly more effective way of vindicating the rights of affected employees than individual arbitration,*" the court must invalidate the class arbitration waiver. (*Id.* at p. 450, italics added.)

With respect to the employer's claim that this rule discriminates against arbitration clauses in violation of the FAA, the *Gentry* court stated: "We considered at great length and rejected a similar argument in *Discover Bank.* . . . The principle that in the case of certain unwaivable statutory rights, class action waivers are forbidden when class actions would be the most effective practical means of vindicating those rights is an arbitration-neutral rule: it applies to class waivers in arbitration and nonarbitration provisions alike. . . . 'The *Armendariz* requirements are . . . applications of general state law contract principles regarding the unwaivability of public rights to the unique context of arbitration, and accordingly are not preempted by the FAA.' " (*Gentry, supra,* 42 Cal.4th at p. 465, citations omitted.)

### III. *United States Supreme Court Decisions*—Stolt-Nielsen *and* Concepcion

#### A. Stolt-Nielsen

Three years after *Gentry,* the United States Supreme Court decided *Stolt-Nielsen,* which concerned the issue whether a court/arbitrator has the authority under the FAA to order classwide arbitration in a situation where there is no agreement to engage in class arbitration. (*Stolt-Nielsen, supra,* 559 U.S. 662 [130 S.Ct. 1758].) In *Stolt-Nielsen* there was no class action

waiver provision in the arbitration agreement, but the parties each acknowl-edged they had *not* agreed to class arbitration. (*Id.* at pp. ___, ___, fn. 10 [130 S.Ct. at pp. 1766, 1776, fn. 10].) The *Stolt-Nielsen* court held a court/arbitrator may not order class arbitration under an arbitration agreement governed by the FAA unless *all* parties have agreed to class arbitration. (559 U.S. at p. ___ [130 S.Ct. at p. 1775].) The court reasoned that "the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms' " and "[w]hether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.' . . . This is because an arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." (*Id.* at pp. ___–___ [130 S.Ct. at pp. 1773–1774], citation omitted.) Under this holding, "a party may not be compelled under [an arbitration agreement governed by] the FAA to submit to class arbitration unless there is a contractual basis for concluding that both parties *agreed* to do so."[2] (559 U.S. at p. ___ [130 S.Ct. at p. 1775], original italics.)

## B. Concepcion

One year later, the United States Supreme Court overruled *Discover Bank*. (*Concepcion, supra*, 563 U.S. ___ [131 S.Ct. 1740].) In *Concepcion*, tele-phone customers sued AT&T, challenging AT&T's imposition of a sales tax on a free phone under the sales contract. (*Id.* at p. ___ [131 S.Ct. at p. 1744].) As in *Discover Bank*, the consumer contract contained an arbitration provi-sion that included a clause in which the plaintiffs expressly waived their rights to class arbitration. Relying on *Discover Bank*, the lower courts refused to enforce the class action waiver clause under California law. (*Concepcion, supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1745].) The United States Supreme Court granted certiorari and stated the "question in this case is whether § 2 [of the FAA] preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable," which the *Concepcion* court "refer[red] to . . . as the *Discover Bank* rule." (*Id.* at pp. ___–___ [131 S.Ct. at pp. 1745–1746].)

█ Observing that the *Discover Bank* rule in practical terms has a dispro-portionate impact on arbitration agreements and essentially allows "any party

---

[2] Based on language in a dissenting opinion in *Stolt-Nielsen*, one federal district court found that *Stolt-Nielsen* does not apply to arbitration clauses in contracts of adhesion. (*Saincome v. Truly Nolen of America, Inc.* (S.D.Cal., Aug. 3, 2011, No. 11-CV-825-JM (BGS)) 2011 U.S.Dist. Lexis 85880.) We find this narrow reading of *Stolt-Nielsen* to be unsupported. Although *Stolt-Nielsen* arose in the context of a commercial dispute, given the broad language of *Stolt-Nielsen*'s majority opinion, *Stolt-Nielsen*'s rule requiring mutual consent to class arbitra-tion applies equally to contracts of adhesion.

to a consumer contract to demand" classwide arbitration, the *Concepcion* court found the rule "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." (*Concepcion, supra,* 563 U.S. at pp. \_\_\_, \_\_\_ [131 S.Ct. at pp. 1750, 1748].) The United States Supreme Court further held the *Discover Bank* rule was inconsistent with the FAA because it imposed classwide arbitration procedures without both parties' consent. (*Concepcion,* at pp. \_\_\_–\_\_\_ [131 S.Ct. at pp. 1750–1751].) The *Concepcion* court reiterated its conclusions in *Stolt-Nielsen* that "the FAA requires courts to honor parties' [contractual] expectations" and the " 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' " (*Concepcion,* at pp. \_\_\_, \_\_\_ [131 S.Ct. at pp. 1752, 1748].) The court also discussed at length the substantial and material changes brought about by the shift from individual to class arbitration (*id.* at pp. \_\_\_–\_\_\_ [131 S.Ct. at pp. 1751–1752]), and observed that "[a]rbitration is poorly suited to the higher stakes of class litigation" (*id.* at p. \_\_\_ [131 S.Ct. at p. 1752]). Rejecting the argument that a state may require a procedure inconsistent with the FAA because the state seeks to ensure that parties with "small-dollar claims" have redress in the legal system, the *Concepcion* court concluded that "class arbitration, to the extent it is manufactured by [the] *Discover Bank* [rule] rather than consensual, is inconsistent with [and preempted by] the FAA." (563 U.S. at pp. \_\_\_, \_\_\_ [131 S.Ct. at pp. 1753, 1751].)

Less than one month after *Concepcion* was decided, Truly Nolen filed its motion to compel arbitration in this case. Before the trial court ruled on the motion, the Second District Court of Appeal found (in dicta) that *Concepcion*'s overruling of *Discover Bank* did not affect the continued viability of *Gentry*'s holding. (See *Brown, supra,* 197 Cal.App.4th at pp. 497–498.) The majority and dissent in *Brown* agreed that the court remained bound by *Gentry* under stare decisis principles, but the *Brown* majority also suggested that *Gentry* continued to be valid because it was based on different analytical grounds from the now disapproved *Discover Bank* decision. (*Brown, supra,* at p. 498; *id.* at p. 505 (conc. & dis. opn. of Kriegler, J.).)[3] Relying on *Brown*, the trial court rejected Truly Nolen's argument that *Gentry* is no longer binding on California courts.

Since that time, one Court of Appeal has followed *Brown*'s dicta in a case involving an arbitration agreement without a class action waiver (*Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th

---

[3] The *Brown* court's ruling on the *Gentry* issue was dicta because it determined there was no evidence to support the *Gentry* factors in the case. The *Brown* court's primary holding concerned the effect of *Concepcion* on the plaintiff's claim under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.), which is not at issue in this case because plaintiffs did not bring a PAGA claim.

506 [140 Cal.Rptr.3d 347] (*Kinecta*)) and another Court of Appeal has held that *Gentry* is no longer controlling law based on *Concepcion*'s implicit rejection of *Gentry*'s reasoning (*Iskanian v. CLS Transportation Los Angeles, LLC* (2012) 206 Cal.App.4th 949 [142 Cal.Rptr.3d 372] (*Iskanian*)). Additionally, the United States Supreme Court has applied *Concepcion*'s interpretation of the FAA to conclude that a court must enforce a class action waiver provision "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" (*CompuCredit, supra*, 565 U.S. at p. ___ [132 S.Ct. at p. 669].)

## IV. *Analysis*

With this summary of the legal landscape upon which we must analyze the parties' contentions, we turn to address the parties' specific arguments asserted in this writ proceeding.

### A. *Truly Nolen's Contentions Challenging Court's Application of* Gentry

As its main arguments in the writ proceeding, Truly Nolen contends the court erred in concluding *Gentry* remains viable after *Stolt-Nielsen* and *Concepcion* and the court erred in applying *Gentry* because there was insufficient evidence to show plaintiffs satisfied the *Gentry* factors in this case.

#### 1. *Is* Gentry *Still Good Law?*

The California Supreme Court has not yet revisited *Gentry* after the *Concepcion* and *Stolt-Nielsen* decisions. However, most federal courts and at least one state court have concluded that *Concepcion*'s broad language and reasoning undermines *Gentry*'s rationale. (See *Iskanian, supra*, 206 Cal.App.4th at pp. 958–961; *Lewis v. UBS Financial Services, Inc.* (N.D.Cal. 2011) 818 F.Supp.2d 1161, 1167 ["*Concepcion* effectively overrules *Gentry*" because "[l]ike *Discover Bank*, *Gentry* advances a rule of enforceability that applies specifically to arbitration provisions . . ."]; *Jasso v. Money Mart Express, Inc.* (2012) 879 F.Supp.2d 1038, 1042–1045; *Morvant v. P.F. Chang's China Bistro, Inc.* (N.D.Cal., May 7, 2012, No. 11-CV-05405 YGR) 2012 U.S.Dist. Lexis 63985, pp. *15–*22; *Valle v. Lowe's HIW, Inc.* (N.D.Cal., Aug. 22, 2011, No. 11-1489 SC) 2011 U.S.Dist. Lexis 93639, pp. *16–*17 [because *Gentry* and *Discover Bank* "rely on the same California precedent and logic . . . the Court concludes that in light of *Concepcion*, *Gentry* is no longer good law"]; see also *Coneff v. AT&T Corp.* (9th Cir. 2012) 673 F.3d 1155, 1158 [rejecting

argument that *Concepcion* "permits state law to invalidate class-action waivers when such waivers preclude effective vindication of statutory rights"].)

A minority of courts have posited (mostly in dicta) that *Gentry* remains viable because *Discover Bank* was a particular application of California's unconscionability doctrine, whereas *Gentry* was based on *Armendariz*'s public policy rationale. (See *Kinecta, supra,* 205 Cal.App.4th at p. 516; *Brown, supra,* 197 Cal.App.4th at p. 498; *Plows v. Rockwell Collins, Inc.* (C.D.Cal. 2011) 812 F.Supp.2d 1063, 1069.)

We agree with the majority view, and find the latter distinction to be unpersuasive. Although *Gentry* and *Discover Bank* were founded on different theoretical grounds because *Discover Bank* was based on an unconscionability analysis and *Gentry* was based on the *Armendariz* public policy rationale (see *Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825, 836–841 [109 Cal.Rptr.3d 289]), *Concepcion*'s holding was unrelated to the fact that *Discover Bank* was a particular application of California's unconscionability analysis. *Concepcion* reaffirmed the validity of a state's general unconscionability defenses as applied to arbitration agreements, but found *Discover Bank* objectionable mainly because it allowed courts to ignore and refuse to enforce the clear terms of the parties' agreement, and instead employ a judicial policy judgment that the class procedure would better promote the vindication of the parties' rights in certain cases. This discredited reasoning is the same rationale employed by the *Gentry* court. In requiring courts to consider the four enumerated factors, the *Gentry* court held that courts have the authority to invalidate class action waivers in wage and hour cases because the waivers would "frequently if not invariably" have an "exculpatory effect" that is "similar" to the consumer waivers considered in *Discover Bank* and thus would potentially "undermine the enforcement" of the employee's statutory rights. (*Gentry, supra,* 42 Cal.4th at p. 457.)

Based on *Concepcion*'s expansive language and its clear mandate that arbitration agreements must be enforced according to their terms despite a state's policy reasons to the contrary, and the United States Supreme Court's recent holding that this principle extends to federal statutory claims (*CompuCredit, supra,* 565 U.S. ___ [132 S.Ct. 665]), we agree with those courts that have questioned the continuing validity of the *Gentry* standard to invalidate an express arbitration waiver contained in an employment arbitration agreement governed by the FAA. This same conclusion applies to employment arbitration agreements that do not contain an express or implied agreement to permit class arbitration. Under the reasoning of *Concepcion* and *Stolt-Nielsen,* absent a showing of mutual consent, it is questionable whether courts can validly invoke *Gentry* to require an objecting party to engage in classwide arbitration.

■ Plaintiffs argue that we should adhere to *Gentry* until the California Supreme Court has the opportunity to review the decision in light of the recent United States Supreme Court decisions in *Concepcion* and *Stolt-Nielsen*. We find this argument persuasive. On federal statutory issues, intermediate appellate courts in California are absolutely bound to follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the *same* question differently. (See *People v. Superior Court (Williams)* (1992) 8 Cal.App.4th 688, 702–703 [10 Cal.Rptr.2d 873]; *Elliott v. Albright* (1989) 209 Cal.App.3d 1028, 1034 [257 Cal.Rptr. 762]; see also *Chesapeake & Ohio Ry. Co. v. Martin* (1931) 283 U.S. 209, 220 [75 L.Ed. 983, 51 S.Ct. 453].) Although we agree with Truly Nolen that *Concepcion* implicitly disapproved the reasoning of the *Gentry* court, the United States Supreme Court did not directly address the precise issue presented in *Gentry*. Under the circumstances, we decline to disregard the California Supreme Court's decision without specific guidance from our high court. (See *Brown, supra*, 197 Cal.App.4th at p. 498.)

### 2. *Does the Factual Record Support the Existence of* Gentry *Factors in This Case?*

We thus turn to consider the issue whether the court correctly found the *Gentry* factors were established in this case.

### a. *Summary of Applicable Legal Principles*

■ The *Gentry* court required a party seeking to invalidate an express class action waiver in a wage and hour case to make a factual showing under a four-factor test. (*Gentry, supra*, 42 Cal.4th at p. 463; see *Brown, supra*, 197 Cal.App.4th at p. 497; *Kinecta, supra*, 205 Cal.App.4th at p. 517.) Specifically, the *Gentry* court stated that when it is alleged that an employer has systematically denied proper overtime pay to a class of employees and a class action is requested notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial court must consider the following four factors: (1) "the modest size of the potential individual recovery"; (2) "the potential for retaliation against members of the class"; (3) "the fact that absent members of the class may be ill informed about their rights"; and (4) "other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration." (*Gentry, supra*, 42 Cal.4th at p. 463.)

■ *Gentry* held that a class action waiver must be invalidated if the trial court concludes, based on these factors, that class arbitration is "likely to be a significantly more effective practical means of vindicating the rights of affected employees than individual litigation or arbitration," and that there

would be a "less comprehensive enforcement" of the applicable laws if the class action device is disallowed. (*Gentry, supra,* 42 Cal.4th at p. 463.) The court emphasized that the appropriateness of class arbitration is for the trial court's determination based on the factual record before it, and stated that a court should consider not only the knowledge and sophistication of the class representatives, but also the facts pertaining to the specific class of employees affected by the particular employer's allegedly unlawful practices. (*Id.* at pp. 463, fn. 7, 466.)

 Generally, it is the plaintiff's burden to establish the four *Gentry* factors, and the court has broad discretion in ruling on the motion. (*Gentry, supra,* 42 Cal.4th at pp. 463–464; *Sanchez v. Western Pizza Enterprises, Inc.* (2009) 172 Cal.App.4th 154, 169–170 [90 Cal.Rptr.3d 818] (*Sanchez*); see *Kinecta, supra,* 205 Cal.App.4th at p. 517; *Brown, supra,* 197 Cal.App.4th at p. 497.)

### b. *Relevant Factual Background*

To meet the four-part *Gentry* test, plaintiffs submitted the declarations of two of their attorneys, Norman Blumenthal and Christopher Olsen. Both attorneys said they have substantial experience in representing employees in wage and hour class actions. Each discussed matters pertaining to the *Gentry* factors in general, but neither counsel provided any specific facts about the named plaintiffs, the class of former or current Truly Nolen employees, the facts pertinent to their claims in this case, or the relevant employment conditions. The declarations related to class action employment cases generically, not to the facts of this case specifically.

For example, with respect to the first *Gentry* factor (potential recovery size), Olsen stated: "Individual wage and hour cases often fall well below $25,000 . . . . Without the full scope of discovery available to meet the burden of proof regarding the wage and hour claims, it is simply not worth the labor and risk associated with litigation. On many occasions, I have attempted to pass such claims off to [other] counsel only to have them unanimously rejected. Thus, the individual worker is left to represent him or herself and navigate complex wage and hour laws. Many simply give up." Blumenthal similarly opined that based on his experience and conversations with other attorneys, "most firms do not take individual wage & hour claims because the damages in such cases are often very small. . . ."

With respect to the second *Gentry* factor (potential for retaliation), Olsen said: "Class and representative actions are not brought by the faint of heart. It takes courage to stand up to a large employer; this is especially so when the employee challenges his or her current employer. Employers often retaliate

against current and former employees." Blumenthal similarly stated: "While many employers may not terminate an employee directly for filing a lawsuit, employers have become very subtle when it comes to methods of retaliation. . . . [¶] . . . [¶] . . . During my time as a class action employment attorney, several of the named plaintiffs I have represented in wage & hour class actions believed they have been retaliated against by their current or former employer. . . . Based on this experience, I believe that the fear of retaliation is a reasonable and justified fear for employees."

With respect to the third *Gentry* factor (the extent to which absent class members are informed of their rights), Olsen said that most potential clients who inquire about bringing wage and hour claims "are minimum wage workers, many do not speak fluent English, and the damages are often far exceeded by even basic litigation costs." He further stated: "I have interviewed numerous employees . . . , [and] most employees have very minimal knowledge about California and federal wage & hour laws . . . ." On the knowledge element, Blumenthal similarly discussed the fact that even "high-level executives and supervisors have very minimal knowledge about California and federal wage & hour laws [and] simply do not understand the myriad of laws that govern[] employment relationships."

With respect to the fourth *Gentry* factor (real-world obstacles), Olsen discussed the advantages of class actions: "[C]lass actions more effectively place the employee on equal footing with the defendant/employer. Many employees/class representative[s] have expressed to me that the motivating factor in bringing suit against their employer is to stop the employer from treating other employees the way it treated the class representative. . . . Without the threat of a class action, the employer has no incentive to change [and] become compliant with wage and hour laws. A $2,000.00 individual action will not cause an employer to spend hundreds of thousands, perhaps even millions, to review, change, and roll-out compliant practices." Blumenthal similarly emphasized that class action cases "allow an attorney to aggregate claims of numerous employees in a similar situation so that the amount of damages at issue makes litigation economically feasible. . . ."

Truly Nolen objected to much of this evidence on the grounds that the asserted facts were irrelevant, lacked foundation, and were conclusory and speculative. The court overruled most of the objections. At the hearing on Truly Nolen's motion, Truly Nolen's counsel argued that the attorney declarations were insufficient to meet the *Gentry* test because the evidence "was just too general. . . . [U]nder *Gentry*, what actually is required is something addressing the individual claims of the plaintiffs and the size of their claims."

In its final order, the trial court rejected these arguments. The court found plaintiffs met their burden to establish the four *Gentry* elements. In reaching

this factual conclusion, the court relied primarily on *Gentry*'s discussion of the policy reasons for each of the four factors and noted that counsel's experience described in their declarations ("while largely anecdotal") supported, and/or was consistent with the California Supreme Court's policy discussion.

c. Gentry *Analysis*

Although a court has broad discretion in evaluating the *Gentry* factors, plaintiffs presented *no* evidence with respect to the application of these factors to the circumstances in this particular case. The only evidence relevant *to this case* was contained in the declarations of the two named plaintiffs, whose statements tended to negate any concerns expressed by the attorneys. Both plaintiffs acknowledged they were *aware* of their rights under wage and hour laws, and expressly notified their manager that their rights were being violated, but Truly Nolen refused to remedy the situation or remind the employees that they had signed an arbitration agreement. Further, the arbitration agreements at issue contain a specific provision prohibiting Truly Nolen from retaliating for making a complaint under the employer's dispute resolution system. Additionally, the arbitration agreement provides numerous protections to employees who bring individual claims, including that Truly Nolen bears the cost of the arbitration proceeding (regardless who prevails) and that if the employee chooses not to be represented by counsel, Truly Nolen must also appear without legal representation. Moreover, without any evidence of the amount of damages at stake, it is far from clear that it would be cost prohibitive for plaintiffs to arbitrate their claims on an individual basis.

The lack of individualized evidence supporting the application of the *Gentry* factors distinguishes this case from other cases in which courts have invalidated class action waivers under *Gentry*. (See, e.g., *Sanchez, supra*, 172 Cal.App.4th 154; *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277 [90 Cal.Rptr.3d 539] (*Franco*).) For example, in *Sanchez*, the employee produced evidence showing the amount at issue for each employee was very small (the amount of unreimbursed pizza delivery costs for each employee who used his or her car for a delivery). (*Sanchez, supra*, at pp. 161, 170–171.) The evidence also showed the delivery drivers were minimum wage workers and most were "immigrants with limited English language skills who [were] likely to be unaware of their legal rights." (*Id.* at p. 171.) Similarly, in *Franco*, the employee filed a declaration stating he was unaware of his legal rights with respect to wage and hour laws, he was personally aware of his employer's retaliatory conduct towards employees who had complained about working conditions, and he felt that he would be fired if he asserted his legal rights. (*Franco, supra*, at pp. 1296–1297.) Unlike *Sanchez*

and *Franco*, plaintiffs here produced *no* evidence supporting the *Gentry* factors as applied to the particular circumstances of this case.

Moreover, to the extent there exists authority supporting the application of the *Gentry* factors based solely on generalized statements from attorneys about the benefits of classwide arbitration, we find this authority unpersuasive. *Gentry* held that whether a class action waiver is exculpatory and thus not enforceable in the wage and hour context depends on a party's "factual showing." (*Gentry, supra*, 42 Cal.4th at p. 466.) Although the *Gentry* court discussed in detail the reasons each of the four factors supported a finding that class arbitration provides a significantly more effective means of vindicating an employee's statutory rights, the court specifically deferred the decision to the trial court to determine "whether, *in this particular case*," the plaintiff met his burden to establish these factors. (*Ibid.*, italics added.) Given the court's insistence on the need for a factual record, the *Gentry* court could not have intended that a party could meet this burden merely by producing an attorney's declaration that reasserts the general policy concerns expressed by the California Supreme Court, without relating these policy concerns to the specific facts of the case. Although generic evidence provides context, it is insufficient to meet the *Gentry* test absent a showing that those general facts exist in the particular case.

Moreover, to the extent the *Gentry* decision would permit such a generalized showing to negate the parties' contractual intentions, that conclusion is no longer valid after the *Concepcion* and *Stolt-Nielsen* decisions. In *Stolt-Nielsen*, the United States Supreme Court made clear that a court/arbitrator has no authority to require class arbitration absent a showing the parties mutually consented to the procedure. (*Stolt-Nielsen, supra*, 559 U.S. at p. ___ [130 S.Ct. at p. 1775].) In *Concepcion*, the United States Supreme Court likewise held that a state may not, under the guise of its contract interpretation laws or its public policy, decide that all claims of a particular type must be ordered into classwide arbitration if requested by one party. (*Concepcion, supra*, 563 U.S. at pp. ___–___ [131 S.Ct. at pp. 1745–1754].) If we were to uphold the trial court's determination that the *Gentry* factors were met based on counsel's generic discussion of the benefits of classwide arbitration and the disadvantages of individual arbitration, we would be ignoring the United States Supreme Court's pronouncements and essentially permit classwide arbitration in every case alleging wage and hour violations. Assuming the *Gentry* standard survives the United States Supreme Court holdings, the factual analysis as to whether the *Gentry* factors apply in any particular case must be specific, individualized, and precise.

### B. *Plaintiffs' Non-*Gentry *Contentions for Upholding Court's Order*

In responding to Truly Nolen's writ petition in this court, plaintiffs devote much of their briefs to urge us to uphold the trial court's order on grounds other than the *Gentry* decision. Specifically, plaintiffs contend (1) the court's order was proper because the parties' arbitration contract contained an implied agreement to permit class arbitration; (2) the court was precluded by the National Labor Relations Act (NLRA) from ordering individual arbitration; and (3) the trial court had no jurisdiction to rule on any class arbitration issue. For the reasons explained below, we reject each of these contentions on the record before us. We remand the matter to permit the court to rule on plaintiffs' assertion there is an implied agreement to permit classwide arbitration.

### 1. *Implied Agreement for Class Arbitration*

 Plaintiffs contend that regardless whether *Gentry* applies in this case, the court's order was proper because there was no express class action waiver in the arbitration agreement and the parties had an implied agreement to permit class arbitration. We agree conceptually this issue is foundational and preliminary to any *Gentry* analysis. Where, as here, there is no express class action waiver in an arbitration agreement, class action arbitration is not prohibited if both parties have agreed to the procedure explicitly or implicitly. (See *Stolt-Nielsen, supra,* 559 U.S. at pp. ___–___ [130 S.Ct. at pp. 1773–1776]; *Vazquez v. ServiceMaster Global Holdings, Inc.* (N.D.Cal., June 29, 2011, No. C 09-05148 SI) 2011 U.S.Dist. Lexis 69753, p. *9, fn. 1 (*Vazquez*).) If it is determined there is an express or implied contractual basis for concluding the parties agreed to class action arbitration, there is no need to reach the issue whether public policy permits the court to override the parties' contractual intentions. The *Gentry* analysis is potentially triggered only when a party is asking the court to allow class arbitration and *the parties' contract does not show mutual agreement for the procedure.*

Truly Nolen counters that we should reject plaintiffs' contention regarding the existence of an implied agreement for class arbitration because a party may not be compelled into a class arbitration unless there is an *express* provision in which the parties agree to this procedure. This argument reflects a misreading of *Stolt-Nielsen.*

 In *Stolt-Nielsen,* the parties stipulated that their contract did *not* contain an express or implied agreement to permit class arbitration *and* that they had never reached an agreement on the class arbitration issue, which the Supreme Court referred to as a " 'silent' " agreement. (*Stolt-Nielsen, supra,*

559 U.S. at p. ___ [130 S.Ct. at p. 1766]; see *id.* at p. ___, fn. 10 [130 S.Ct. at p. 1776, fn. 10].) Despite the parties' stipulation that there was " 'no agreement' " to permit class arbitration (*id.* at p. ___, fn. 10 [130 S.Ct. at p. 1776, fn. 10]), the arbitration panel ordered class arbitration based primarily on public policy, rather than on an interpretation of the contract under potentially applicable New York law or maritime law. (*Id.* at pp. ___–___ [130 S.Ct. at pp. 1768–1770].) The United States Supreme Court held that under the FAA the arbitration panel exceeded its jurisdiction as it had no authority to order class arbitration without a contractual basis showing a mutual intent to allow arbitration. (559 U.S. at pp. ___–___ [130 S.Ct. at pp. 1775–1776].) The court also held the mere fact parties have agreed to arbitrate a dispute does not support an inference that they have each consented to class arbitration. (*Ibid.*) However, because the parties' agreement at issue was "silent" (no assertion of a contractual basis showing mutual intent), the court declined to decide "what contractual basis may support a finding that the parties agreed to authorize class-action arbitration." (*Id.* at p. ___, fn. 10 [130 S.Ct. at p. 1776, fn. 10].) But the court did not hold an express provision was required to show mutual intent and observed that the "interpretation of an arbitration agreement is generally a matter of state law . . . ." (*Id.* at p. ___ [130 S.Ct. at p. 1773].)

Relying on *Stolt-Nielsen*, the courts have recognized that an implied agreement may be sufficient to support class arbitration. (See *Jock v. Sterling Jewelers, Inc.* (2d Cir. 2011) 646 F.3d 113, 120–121; *Vazquez, supra,* 2011 U.S.Dist. Lexis 69753 at p. *9, fn. 1; see also *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1128 [144 Cal.Rptr.3d 198]; *Kinecta, supra,* 205 Cal.App.4th at pp. 518–519.)

Truly Nolen additionally argues that even assuming an implied agreement is sufficient under *Stolt-Nielsen*, plaintiffs never raised this issue before the trial court and thus they have waived the right to litigate this issue. We agree plaintiffs did not raise the issue below. In its motion below to compel individual arbitration, Truly Nolen argued that under *Stolt-Nielsen* "a party may not be compelled" under the FAA to submit to class arbitration " 'unless there is a contractual basis for concluding that the party agreed to do so.' " In response, plaintiffs did not argue the arbitration agreement could be interpreted to mean the parties mutually agreed to class action arbitration. Instead plaintiffs assumed the correctness of Truly Nolen's argument that there was no mutual agreement to arbitrate, and argued that *Gentry* nonetheless required the court to find the class action arbitration procedure was available under the parties' arbitration agreements. Plaintiffs maintained that class action arbitration waivers are unenforceable if the *Gentry* factors are established, and did not contend the parties had impliedly agreed to permit class arbitration.

On this record, plaintiffs waived their right to argue in *this* court that there *was* a contractual basis for classwide arbitration in the arbitration agreement. (See *Bank of America v. Cory* (1985) 164 Cal.App.3d 66, 78, fn. 4 [210 Cal.Rptr. 351]; *California State Auto. Assn. Inter-Ins. Bureau v. Antonelli* (1979) 94 Cal.App.3d 113, 122 [156 Cal.Rptr. 369].) However, it does not necessarily follow plaintiffs have forfeited the right to litigate this issue at any time. Given the trial court's erroneous conclusion that *Gentry* applied and the lack of discussion in the proceedings below regarding what should happen if *Gentry* did not apply, and the fact that the law is rapidly evolving in this area, it is appropriate to provide the parties with the opportunity to fully present their arguments and evidence to the trial court on the issues pertaining to an implied agreement to arbitrate on a classwide basis. We provide specific instructions for the trial court and the parties in the Conclusion below.

## 2. *NLRA Issue*

Plaintiffs also urge us to uphold the court's order refusing to order individual arbitration based on provisions in the NLRA, as interpreted in *D. R. Horton* (Jan. 3, 2012) 357 NLRB No. 184 (*Horton*). We reject this argument.

In *Horton*, the National Labor Relations Board (NLRB) held that a mandatory, employer-imposed agreement requiring all employment-related disputes to be resolved through individual arbitration (and disallowing class claims) violated the NLRA because it prohibited the exercise of substantive rights protected by section 7 of the NLRA. (*Horton, supra*, 357 NLRB No. 184, at p. 1.) Section 7 provides that employees shall have the right "to engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." (29 U.S.C. § 157.) The NLRB found that "employees who join together to bring employment-related claims on a classwide or collective basis in court or before an arbitrator are exercising rights protected by Section 7 of the NLRA." (*Horton, supra*, 357 NLRB No. 184, at p. 3.) *Horton* also analyzed FAA preemption principles and *Concepcion*, and concluded that the FAA did not preempt its conclusion that class action waivers in employment arbitration agreements are unenforceable. (*Horton, supra*, 357 NLRB No. 184, at pp. 7–12.)

As have other courts, we find the NLRB's conclusion on the preemption issue to be unpersuasive and we decline to follow it. (*Nelsen v. Legacy Partners Residential, Inc., supra*, 207 Cal.App.4th at pp. 1132–1135; *Iskanian, supra*, 206 Cal.App.4th at pp. 961–963; see *Jasso v. Money Mart Express, Inc., supra*, 879 F.Supp.2d at pp. 1043–1044.) The United States Supreme Court has held that arbitration agreements pertaining to statutory claims must be enforced according to their terms, absent an express

" 'contrarycongressional command' overriding the FAA." (*CompuCredit, supra*, 565 U.S. at p. ___ [132 S.Ct. at p. 670.) In light of this clear authority, *Horton*'s analysis is unsupported.

### 3. *Trial Court's Authority to Decide Class Arbitration Issues Presented Below*

In their briefs before *this* court, plaintiffs argue that we should deny Truly Nolen's petition because the trial court had no authority to decide *any* issues involving class arbitration, and instead these issues are solely for the arbitrator. The argument is without merit on the record before us.

 Truly Nolen specifically requested that the trial court order the parties to proceed to arbitration on an individual (and not a class) basis. Plaintiffs never objected to the court's ruling on this request and instead expressly and specifically submitted the matter for the court's resolution. Because these issues are not jurisdictional, the trial court had the authority to address the issues when a ruling was requested by all parties. (See *In re Checking Account Overdraft Litigation* (11th Cir. 2012) 672 F.3d 1224, 1228; *Doe v. Princess Cruise Lines, Ltd.* (11th Cir. 2011) 657 F.3d 1204, 1213.) By failing to ask the court to defer the class arbitration issues to the arbitrator, plaintiffs cannot now complain about the court's authority to rule on those issues.[4]

At oral argument, plaintiffs' counsel commented that he had always believed the issue of an implied agreement to arbitrate would be presented to the arbitrator. Accepting this representation as true, counsel had the obligation to make this position known to the court and to opposing counsel in the proceedings below. As we have discussed, the issue of an implied agreement to permit class arbitration is a predicate matter to the *Gentry* issues. If there is no class arbitration prohibition in the contract (meaning no express waiver or an express or implied agreement to permit class arbitration), there is no need to reach the public policy concerns expressed in *Gentry*. Thus, if counsel had believed this implied agreement issue should be reserved for the arbitrator, it was incumbent on counsel to notify the court and opposing counsel when the court was ruling on the motion to compel individual arbitration.

---

[4] Although there are conflicting authorities on the issue, at least one California Court of Appeal has held that the arbitrator, not the court, determines whether class arbitration was permitted by the arbitration agreement, relying on *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [156 L.Ed.2d 414, 123 S.Ct. 2402]. (See *Garcia v. DIRECTV, Inc.* (2004) 115 Cal.App.4th 297 [9 Cal.Rptr.3d 190].) However, as *Stolt-Nielsen* noted, *Bazzle* was a plurality decision on this point and is not binding authority. (*Stolt-Nielsen, supra*, 559 U.S. at p. ___ [130 S.Ct. at p. 1772].) *Stolt-Nielsen* expressly declined to decide whether the court or the arbitrator determines if there is a contractual basis for finding an intent to allow class arbitration.

## V. *Conclusion*

We provide a brief summary of our holdings to assist the court and parties on remand.

■ The court erred in concluding that the *Gentry* factors were established in this case. Based on this error, Truly Nolen requests that we direct the trial court to grant Truly Nolen's request to order individual arbitration. However, we have concluded that it is appropriate to provide the parties the opportunity to present evidence and argument on the predicate issue as to whether the parties' arbitration agreement contained an implied agreement to authorize class arbitration.

■ After allowing the additional briefing and argument, the court should rule on this implied agreement issue, guided by the legal principles set forth in *Stolt-Nielsen* and California law regarding contract interpretation. Under the FAA, contract interpretation is generally governed by the applicable state law. Thus, the question whether an implied agreement to permit classwide arbitration exists must be resolved under our state law. (See *Stolt-Nielsen, supra,* 559 U.S. at p. ___ [130 S.Ct. at p. 1773]; *Jock v. Sterling Jewelers, Inc., supra,* 646 F.3d at p. 126; see also *In re Checking Account Overdraft Litigation* (11th Cir. 2012) 674 F.3d 1252, 1255.) Under California law, when a party seeks to establish an implied agreement, a trial court or arbitrator applying California law must evaluate the entire contract in light of the contract language and the parties' reasonable expectations and, if appropriate, make factual findings on disputed extrinsic evidence. (See Civ. Code, § 1636; *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 842 [67 Cal.Rptr.3d 635]; *Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448 [66 Cal.Rptr.2d 487]; *Malmstrom v. Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 314–315 [231 Cal.Rptr. 820].)

If there is a contractual basis under California law to conclude that the parties mutually agreed to classwide arbitration, the court should deny the motion to preclude the class arbitration and refer the matter to arbitration. The matter would then be submitted to arbitration and the arbitrator would decide whether to certify the proposed class under well-established class certification law. However, if the court finds there is no contractual basis for finding the parties mutually agreed to classwide arbitration, the court should order the matter to arbitration on an individual basis. (See *Kinecta, supra,* 205 Cal.App.4th at p. 519; see also *Stolt-Nielsen, supra,* 559 U.S. at p. ___ [130 S.Ct. at p. 1775].)

## DISPOSITION

Let a writ of mandate issue commanding the superior court to vacate the portion of its July 29, 2011 minute order denying Truly Nolen's motion for an order requiring individual arbitration. The matter is remanded for the court to conduct proceedings as outlined in the Conclusion of the opinion and then to issue a new order on Truly Nolen's motion. Truly Nolen is entitled to recover its costs incurred in this writ proceeding.

Benke, Acting P. J., and Aaron, J., concurred.

A petition for a rehearing was denied September 7, 2012.