Filed 9/13/13  Arroyo v. Riverside Auto Holdings, Inc. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

ROBERT ARROYO,

    Plaintiff and Respondent,

v.

RIVERSIDE AUTO HOLDINGS, INC.,

    Defendant and Appellant.

E056256

(Super.Ct.No. RIC1200257)

OPINION

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge. Reversed.

Fine, Boggs & Perkins, John P. Boggs, David J. Reese, and Ian G. Robertson for Defendant and Appellant.

Fernandez & Lauby, Brian J. Mankin, and Marisa L. Kautz for Plaintiff and Respondent.

1

Riverside Auto Holdings, Inc. (Riverside) appeals the denial of its petition to compel arbitration of wage and hour claims asserted in a complaint filed by respondent Robert Arroyo, a former employee.

Since the case was filed as a class action, the petition also requested an order that the plaintiff's claims are to be heard individually and not on a class basis.

I

FACTS AND PROCEDURAL HISTORY

Arroyo is a former employee of Riverside Auto Holdings, Inc. doing business as Singh Chevrolet. On January 5, 2012, Arroyo filed a class action complaint against Riverside under Code of Civil Procedure section 382.[1] The class was defined as "[a]ll current and former hourly, non-exempt automobile mechanic employees employed by Riverside Auto Holdings Inc. in California within the four years prior to the filing of [the] complaint to the present." The complaint generally alleged that Riverside engaged in a number of wage and hour practices that violated the California Labor Code.

Specifically, seven causes of action were alleged: (1) failure to pay regular and overtime wages; (2) failure to pay minimum wages; (3) failure to indemnify employees for hand tools and equipment; (4) failure to make payments within the required time; (5) failure to provide itemized wage statements; (6) failure to maintain records; and (7) unfair and unlawful competition.

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2

On February 23, 2012, Riverside responded by filing a petition to compel arbitration. The petition alleged that Riverside had a dispute resolution program to resolve all employment related claims, disputes, or controversies. All employees were required to use the program. The petition also alleged that Arroyo executed a written agreement that provided that any employment-related dispute would be submitted to, and decided by, binding arbitration. The agreement stated that the arbitration would be controlled by the Federal Arbitration Act (FAA) in conformity with the procedures of the California Arbitration Act. A copy of the agreement signed by Arroyo was attached to the petition. A declaration by the office manager authenticated the alleged arbitration agreement.

Riverside's petition sought an order compelling Arroyo to arbitrate all claims arising from his employment. It also requested "[a]n Order confirming that – consistent with U.S. Supreme Court jurisprudence – because the arbitration agreement does not provide for class or representative actions, the Arbitrator must hear Plaintiff's claims individually and not on any class or representative basis."

In support of its petition, Riverside reviewed the applicable law and argued that Arroyo's individual arbitration agreement must be enforced and that class claims could not be arbitrated because they were not expressly or impliedly contained in the arbitration agreement.

In opposition to the petition, Arroyo submitted a declaration stating that he was directed to apply for the job online, that he was verbally hired, and that he was not

3

directed to sign any document before beginning work. He had no recollection of signing the arbitration agreement. He also stated that he did not receive an employee handbook or instruction on company policies. He was not aware of any policy or rule requiring arbitration of disputes.

Arroyo's accompanying memorandum of points and authorities argued that (1) unfair competition claims could not be ordered to arbitration; (2) the arbitration agreement was not enforceable because it violated federal law; (3) the arbitration agreement was unenforceable because it was unconscionable; and (4) there was no agreement to arbitrate.

Riverside's reply brief argued that (1) there was a written arbitration agreement; (2) the FAA preempted state laws hostile to the enforcement of arbitration agreements: (3) each of plaintiff's claims were subject to arbitration; (4) a National Labor Relations Act decision could not change the strong federal policy to enforce arbitration agreements; and (5) the arbitration agreement was not unconscionable.

A second office manager declaration stated that Arroyo applied for employment on the date the arbitration agreement was digitally signed. A copy of the arbitration clause was attached to the declaration. Although virtually unreadable, it appears to be a different arbitration agreement than the one submitted previously.

Further supplemental briefing was submitted by both parties after the April 3, 2012 hearing.

II

THE TRIAL COURT DECISION

The petition was heard on April 3, 2012.  The trial court noted that the law was in a state of flux on the issues presented.  It chose to follow *Brown v. Ralphs Grocery* (2011) 197 Cal.App.4th 489 instead of *AT&T Mobility LLC v. Concepcion* (2011) ___ U.S. ___ [131 S.Ct. 1740, 179 L.Ed.2d 742] (*AT&T Mobility*).

The trial court therefore denied Riverside's petition to compel arbitration pursuant to the arbitration agreement.[2]

III

STANDARD OF REVIEW

""""The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract.  [Citations.]" [Citation.]'  [Citation.]  Code of Civil Procedure sections 1281.2 and 1290.2 provide for the resolution of motions to compel arbitration in summary proceedings in which '[t]he petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.  [Citation.]  In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony

---

[2]        Unfortunately, no statement of decision was requested under section 1291.

5

received at the court's discretion, to reach a final determination. [Citation.] No jury trial is available for a petition to compel arbitration. [Citation.]' [Citation.] 'We will uphold the trial court's resolution of disputed facts if supported by substantial evidence. [Citation.] Where, however, there is no disputed extrinsic evidence considered by the trial court, we will review its arbitrability decision de novo.' [Citation.]" (*Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1284.)

In *Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, a case relied on by Arroyo, the court said, "[W]here the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo. [Citation.]" (*Id.* at p. 1505.)

Such is the case here. The trial court did not decide any factual issues, and decided the petition based solely on legal determinations. Our standard of review is therefore a de novo standard of review.

Arroyo argues that some issues require application of an abuse of discretion standard of review. We will discuss Arroyo's argument as the need arises.

IV

ISSUES

A.      Riverside contends the arbitration agreement is valid and enforceable. Arroyo contends the agreement is unconscionable and unenforceable.

B.      Arroyo contends there is an implied agreement to permit class arbitration. Riverside contends there is no such agreement.

C.     Riverside contends that the rule of FAA preemption governs interpretation of the agreement in this case.  Arroyo contends that there is no FAA preemption and that California law governs.

D.     Arroyo contends that *Gentry v. Superior Court* (2007) 42 Cal.4th 443[3] "applies in cases, such as the present case, to invalidate a class waiver where the implementation of such a waiver would pose significant obstacles to the vindication of the employees' statutory rights.  [Citation.]"  Arroyo further contends that *Gentry* remains good law after *AT&T Mobility*, *supra*, 131 S.Ct. 1740.

Riverside contends there is no class waiver in this case; the *Gentry* rule is preempted by the FAA, as held by *AT&T Mobility*; and, in any event, the factual showing required by *Gentry* has not been made.

V

IS THERE AN EXPRESS OR IMPLIED ARBITRATION AGREEMENT?

Section 1281 provides:  "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

Section 1281.2 provides, in relevant part:  "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the

---

[3]     The continuing validity of *Gentry* is an unsettled question that is discussed below.  Shepard's lists five cases describing *Gentry* as overruled.

7

petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that [one of three conditions is applicable]."

Since there is no contention that the exceptions apply, Riverside contends that section 1281.2 *required* the trial court to grant the petition. It also argues that the court should have dismissed the class action claims and required Arroyo to proceed on his individual claims.

"'[T]he trial court's first task is to determine whether the parties have in fact agreed to arbitrate the dispute. [¶] We apply general California contract law to determine whether the parties formed a valid agreement to arbitrate.'" (*Gorlach v. Sports Club Co., supra*, 209 Cal.App.4th at p. 1505.)

Unfortunately, the trial court did not make an initial determination that there was an enforceable arbitration agreement. Accordingly, there are no findings that there was a valid agreement to arbitrate or which of the two versions of the arbitration agreement governs. However, the trial court impliedly found such an agreement by finding that it was unenforceable.

Riverside attempts to remedy any defect by arguing that the allegations of its petition, including the allegation that there was an express arbitration agreement, were factually accepted because Arroyo did not file a timely response to the petition. It cites section 1290, which states, "A proceeding under this title in the courts of this State is commenced by filing a petition. Any person named as a respondent in a petition may file

8

a response thereto.  The allegations of a petition are deemed to be admitted by a respondent duly served therewith unless a response is duly served and filed.  The allegations of a response are deemed controverted or avoided."

Riverside then points out that section 1290.6, in relevant part, provides, "A response shall be served and filed within 10 days after service of the petition . . . ."  The record shows that the petition and other documents were mailed on February 24, 2012, and the response was not mailed until March 20, 2012.  Under these facts, the response was not timely served, and the allegations of the petition were deemed admitted.

Arroyo responds by arguing that Riverside waived the issue by not raising it in the trial court.  He cites *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 513-514 (*Truly Nolen*), *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1288, and *Atlas Plastering, Inc. v. Superior Court* (1977) 72 Cal.App.3d 63, 68.

We need not resolve the issue as it involves factual questions that were not addressed by the trial court.  However, since the trial court decided the arbitration agreement was unenforceable on other grounds, we will accept its implied finding that there was an arbitration agreement.

## VI

## IS THE ARBITRATION AGREEMENT UNENFORCEABLE?

As previously stated, section 1281 provides, "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

9

In *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*),[4] our Supreme Court held that an agreement to arbitrate may be unenforceable if it is found to be unconscionable under general principles of contract law. The court said, "[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. [Citations.] In other words, under California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts." (*Id.* at p. 98, fn. omitted.) These grounds include unconscionability. (*Id.* at p. 99.)

*Armendariz* concerned the issue of the validity of a mandatory employment arbitration agreement, i.e., an adhesion agreement imposed on an employee or prospective employee as a condition of employment. (*Armendariz, supra*, 24 Cal.4th at p. 90.) It found that the agreement at issue was unconscionable and therefore unenforceable. (*Id.* at p. 91.)

Addressing this issue, the *Armendariz* court applied the general rule that contract law principles govern the question of unconscionability. (*Armendariz, supra*, 24 Cal.4th at p. 99; see, generally, 3 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 4th ed. 2012) Alternative Dispute Resolution, § 45.28A-C, pp. 2200-2204.)

---

**4** Shepard's lists the case as abrogated in part by *AT&T Mobility, supra,* 131 S.Ct. 1740. It also lists the case as abrogated in part as stated in *Ruhe v. Masimo Corp.* (2011) U.S. Dist. LEXIS 104811.

Under those principles, "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion." (*Armendariz, supra,* 24 Cal.4th at p. 113.) The court went on to define procedural and substantive unconscionability and their relationship. (*Ibid.*)

The arbitration agreement in *Armendariz* was a procedurally unconscionable contract of adhesion because it was imposed on employees as a condition of employment and there was no opportunity to negotiate. (*Armendariz*, *supra*, 24 Cal.4th at pp 114-115.) The same is true of the arbitration agreement in this case.

The court also found substantive unconscionability, primarily because there was a lack of mutuality in the agreement. (*Armendariz*, *supra*, 24 Cal.4th at pp. 119-120.) In other words, substantive unconscionability focuses on """"overly harsh"""" or """"one-sided"""" results. (*Id.* at p. 114.) Accordingly, the trial court correctly refused to enforce the arbitration agreement.

Finally, the court discussed the question of whether the unconscionable provisions could be severed from the other provisions of the arbitration agreement. (*Armendariz*, *supra*, 24 Cal.4th at pp. 121-125.) The court found Civil Code section 1599 applies to this determination, and that the agreement in *Armendariz* was not severable. (*Armendariz*, at pp. 125-127.) The Supreme Court therefore reversed the appellate court and upheld the trial court's decision, which refused to enforce the arbitration agreement.

*Armendariz* is not dispositive here because the trial court did not make any factual findings of procedural or substantive unconscionability. In other words, Arroyo did not

11

parse the arbitration agreements to submit evidence or factual argument that the agreements were substantively unconscionable, and the trial court heard no evidence and made no findings on the issue.[5]

Accordingly, we cannot find that the implied arbitration agreement is unconscionable. Arroyo has simply not met his burden of proof. (*Giuliano v. Inland Empire Personnel, Inc., supra*, 149 Cal.App.4th at p. 1284.) The arbitration agreement is valid and enforceable.

VII

WAS THERE AN IMPLIED AGREEMENT TO PERMIT ARBITRATION

OF CLASSWIDE CLAIMS?

Neither party contends there was an express provision in the arbitration agreement which allowed, or expressly disallowed, arbitration of class action claims. The agreement was simply silent on the subject.

However, Arroyo contends there was an implied agreement to permit class arbitration. He cites Civil Code section 1636: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (See also Civil Code §§ 1635, 1643.)

---

[5]    As discussed below, the parties do debate whether the factual requirements of *Gentry v. Superior Court*, *supra*, 42 Cal.4th 443 were met and whether *Gentry* is still good law.

12

From these basic principles, Arroyo argues that "[g]iven the state of the law applicable to arbitration agreements at the time the parties entered into the agreement, the fact that an express waiver of class claims was not included in the agreement gives rise to the necessary conclusion that the agreement intended to permit class arbitration."

The argument is not sustainable. The only evidence as to the intent of Riverside was the office manager's declaration that all employees were required to follow the dispute resolution program, including the signing of the arbitration agreement. No intent to allow, or disallow, class action litigation can be gleaned from the declaration.

Arroyo's declaration is equally unhelpful. The gist of his declaration is that he was unaware he had signed an arbitration agreement, that no one informed him of company policies, and that no one mentioned arbitration to him. It cannot be said that he negotiated, agreed to, or intended any particular provisions in an agreement he was not even aware of.

We therefore agree with Riverside that the express written arbitration agreement cannot reasonably be interpreted to provide that class action claims can be arbitrated.

The legal issue is whether there was an implied agreement to arbitrate class action claims as a matter of law. In 2010, the United States Supreme Court decided *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) ___ U.S. ___ [130 S.Ct. 1758, 176 L.Ed.2d 605]. The arbitration agreement in that case was a charter party between a shipper and a shipping company. (*Id.* at pp. 1764-1765.) It was not a typical consumer contract. The Supreme Court held that "a party may not be compelled under the FAA to

13

submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." (*Id.* at p. 1775.)

In the present case, there is no suggestion that the trial court was presented with any evidence of an agreement to submit to class arbitration, and the trial court did not make any findings of fact.

We therefore agree with Riverside that the class action claims were not impliedly subject to arbitration.

VIII

FAA PREEMPTION OF CLASS ACTION CLAIMS

One of the most volatile issues in this area of the law concerns the argument that the FAA preempts class action claims in arbitration agreements, particularly when statutory rights, such as the Labor Code provisions cited in this case, are asserted.

In 2005, the California Supreme Court decided *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148.[6] The issue in that case was the validity of a provision in an arbitration agreement that prohibited classwide arbitration. The bank sought arbitration. Our Supreme Court concluded "that, at least under some circumstances, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being asked to waive the right to class action

---

[6] Due primarily to the decision in *AT&T Mobility*, discussed below, Shepard's lists the case as abrogated in 19 cases, overruled in 32 cases, and superseded in 7 cases.

14

litigation or the right to classwide arbitration. We further conclude that the Court of Appeal is incorrect that the FAA preempts California law in this respect." (*Discover Bank*, at p.153.)

The court said, "Such one-sided, exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate a party from liability that otherwise would be imposed under California law are generally unconscionable." (*Discover Bank v. Superior Court, supra,* 36 Cal.4th at p. 161.) It specifically found that "there is nothing to indicate that class action and arbitration are inherently incompatible." (*Id.* at p. 167.) Accordingly, the court held that "classwide arbitrations are workable and appropriate in some cases." (*Id.* at p. 172.)

However, in April, 2011, the United States Supreme Court decided *AT&T Mobility, supra,* 131 S.Ct. 1740. The court said, "Although we have had little occasion to examine classwide arbitration, our decision in *Stolt-Nielsen* is instructive. In that case we held that an arbitration panel exceeded its power under . . . the FAA by imposing class procedures based on policy judgments rather than the arbitration agreement itself or some background principle of contract law that would affect its interpretation. [Citation.] We then held that the agreement at issue, which was silent on the question of class procedures, could not be interpreted to allow them because the 'changes brought about by the shift from bilateral arbitration to class-action arbitration' are 'fundamental.' [Citation.] This is obvious as a structural matter: Classwide arbitration includes absent parties, necessitating additional and different procedures and involving higher stakes.

15

Confidentiality becomes more difficult. And while it is theoretically possible to select an arbitrator with some expertise relevant to the class-certification question, arbitrators are not generally knowledgeable in the often-dominant procedural aspects of certification, such as the protection of absent parties. The conclusion follows that class arbitration, to the extent it is manufactured by *Discover Bank* rather than consensual, is inconsistent with the FAA." (*Id.* at pp. 1750-1751.)

The court therefore decided that the *Discover Bank* rule was preempted by the FAA. (*AT&T Mobility*, *supra*, 131 S.Ct. at p. 1753.)

There is no specific class action waiver in the present case. Accordingly, as stated above, an arbitration agreement that is silent on class action procedures cannot be interpreted to allow class action arbitration.

In the present case, the trial court acknowledged *AT&T Mobility* but declined to follow it. It explained that *AT&T Mobility* "applies to consumer cases and not to a complaint such as this where plaintiff is seeking . . . wages, back wages, and order time [*sic*] and things of that nature."

The trial court's decision, based on an alleged distinction between consumer and nonconsumer arbitration, is contrary to the broad language in *AT&T Mobility* regarding classwide arbitration under the FAA. For example, the court said, "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. [Citation.] But the inquiry becomes more complex when a doctrine normally thought to be generally applicable,

16

such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." (*AT&T Mobility, supra,* 131 S.Ct. at p. 1747.)

Accordingly, the court held that "[t]he overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. *Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.*" (*AT&T Mobility*, *supra*, 131 S.Ct. at p. 1748, italics added.) Thus, FAA preemption is not limited to consumer agreements. In fact, as noted above, *Stolt-Nielsen* involved an arbitration clause in a charter party, not a typical consumer contract.

The trial court in the present case opted to interpret *AT&T Mobility* narrowly by limiting it to consumer cases. Instead, it chose to follow *Brown v. Ralph's Grocery, supra*, 197 Cal.App.4th 489.[7] Brown filed a class action under the Private Attorneys General Act of 2004[8] against her employer for alleged violations of the Labor Code.

The applicable arbitration agreement in *Brown* provided that there was no authority to arbitrate class action or private attorney general disputes. (*Brown v. Ralph's Grocery, supra*, 197 Cal.App.4th at p. 495.) The trial court found both provisions unconscionable. (*Id.* at p. 496.) After supplemental briefing was submitted on the effect

---

[7] *Brown* was filed three months after *AT&T Mobility*. Nevertheless, review was denied (2011 Cal. LEXIS 10809) and certiorari was denied *sub nom. Ralphs Grocery Co. v. Brown* (2012) 132 S.Ct. 1910, 182 L.Ed.2d 771.

[8] Labor Code sections 2698 through 2699.5.

17

of the *AT&T Mobility* preemption issue, the appellate court decided it did not have to determine the FAA preemption issue because a factual showing had not been made as required by *Gentry v. Superior Court, supra*, 42 Cal.4th 443.[9] (*Brown*, at pp. 497-498.)

We therefore conclude that *Brown* is not authority on the FAA preemption issue because it did not address it. The trial court therefore erred in failing to apply the holdings of *AT&T Mobility* to this case.

We also conclude that the trial court erred in interpreting *AT&T Mobility v. Concepcion* narrowly by attempting to make a distinction based on consumer and nonconsumer arbitration agreements. (*Lewis v. UBS Fin. Servs. (*2011) 818 F.Supp.2d 1161, 1167.)

IX

DOES *GENTRY v. SUPERIOR COURT* SURVIVE *AT&T MOBILITY*?

In *Gentry v. Superior Court, supra*, 42 Cal.4th 443, our Supreme Court summarized the case as follows: "In this case we consider whether class arbitration waivers in employment arbitration agreements may be enforced to preclude class arbitrations by employees whose statutory rights to overtime pay pursuant to Labor Code sections 500 et seq. and 1194 allegedly have been violated. We conclude that at least in some cases, the prohibition of classwide relief would undermine the vindication of the employees' unwaivable statutory rights and would pose a serious obstacle to the

---

[9]     Certiorari denied by *Circuit City Stores v. Gentry* (2008) 552 U.S. 1296 [128 S.Ct. 1743, 170 L.Ed.2d 541]. *Gentry* is separately discussed below.

18

enforcement of the state's overtime laws.  Accordingly, such class arbitration waivers should not be enforced if a trial court determines, based on the factors discussed below, that class arbitration would be a significantly more effective way of vindicating the rights of affected employees than individual arbitration.  We therefore reverse the judgment of the Court of Appeal upholding the class arbitration waiver and remand for the above determination." (*Id.* at p. 450, fn. omitted.)

Arroyo cites *Truly Nolen, supra*, 208 Cal.App.4th 487.  In that case, as here, the arbitration agreements were silent on the issue of classwide arbitration.  The trial court granted the motion to compel arbitration but allowed class arbitration, citing *Gentry*. (*Truly Nolen*, at pp. 492-493.)

Truly Nolen filed a petition for writ of mandate challenging the trial court's refusal to order individual arbitration.  The petition contended that *AT&T Mobility* had overruled *Gentry.  (Truly Nolen*, *supra*, 208 Cal.App.4th at p. 493.)

The court responded, "Although *Concepcion*'s reasoning strongly suggests that *Gentry*'s holding is preempted by federal law, the United States Supreme Court did not directly rule on the class arbitration issue in the context of unwaivable statutory rights and the California Supreme Court has not yet revisited *Gentry*.  Thus, we continue to be bound by *Gentry* under California's stare decisis principles.  However, we conclude the trial court's application of the *Gentry* elements was unsupported on the factual record before it." (*Truly Nolen*, *supra*, 208 Cal.App.4th at p. 493.)

19

The opinion continues with a comprehensive examination of the cases and a thorough discussion of the issue presented here.

It summarizes the discussion as follows: "Based on *Concepcion*'s expansive language and its clear mandate that arbitration agreements must be enforced according to their terms despite a state's policy reasons to the contrary, and the United States Supreme Court's recent holding that this principle extends to federal statutory claims [citation], we agree with those courts that have questioned the continuing validity of the *Gentry* standard to invalidate an express arbitration waiver contained in an employment arbitration agreement governed by the FAA.  This same conclusion applies to employment arbitration agreements that do not contain an express or implied agreement to permit class arbitration.  Under the reasoning of *Concepcion* and *Stolt-Nielsen*, absent a showing of mutual consent, it is questionable whether courts can validly invoke *Gentry* to require an objecting party to engage in classwide arbitration." (*Truly Nolen*, *supra*, 208 Cal.App.4th at p. 506.)

Nevertheless, the court follows *Gentry*: "Plaintiffs argue that we should adhere to *Gentry* until the California Supreme Court has the opportunity to review the decision in light of the recent United States Supreme Court decisions in *Concepcion* and *Stolt-Nielsen*.  We find this argument persuasive.  On federal statutory issues, intermediate appellate courts in California are absolutely bound to follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the *same* question differently.  [Citations.]  Although we agree with Truly Nolen that *Concepcion*

20

implicitly disapproved the reasoning of the *Gentry* court, the United States Supreme Court did not directly address the precise issue presented in *Gentry*. Under the circumstances, we decline to disregard the California Supreme Court's decision without specific guidance from our high court. [Citation.]" (*Truly Nolen*, *supra*, 208 Cal.App.4th at p. 507.)

We agree with the *Truly Nolen* analysis. Although many other cases[10] reach varying results on the scope of *AT&T Mobility*, we agree that *Gentry* remains good law until our Supreme Court decides otherwise.[11] We therefore assume that *Gentry* is valid in the following discussion. (*Brown v. Ralph's Grocery, supra*, 197 Cal.App.4th at p. 494; *Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th 506, 516.)

*Gentry* states, "[W]hen it is alleged that an employer has systematically denied proper overtime pay to a class of employees and a class action is requested notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial

---

[10]     See, for example, *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1131-1132 (collecting cases).

[11]     Our Supreme Court states in *Gentry* that it granted review to clarify the holding in *Discover Bank.* (*Gentry v. Superior Court, supra*, 42 Cal.4th at p. 452.) The first "clarification" is entitled "Class Arbitration Waiver in Overtime Cases May Be Contrary to Public Policy." (*Id.* at p. 453, italics omitted.) However, *AT&T Mobility* states that *Stolt-Nielsen* holds that "an arbitration panel exceeded its power under § 10(a)(4) of the FAA by imposing class procedures based on policy judgments rather than the arbitration agreement itself or some background principle of contract law . . . ." (*AT&T Mobility*, *supra*, 131 S.Ct. at p. 1750.) The court thus finds that general public policy grounds are not sufficient to overcome the requirement that the parties must agree to arbitrate the issue or establish a general contract law defense.

21

court must consider the factors discussed above: the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration. If it concludes, based on these factors, that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it must invalidate the class arbitration waiver to ensure that these employees can 'vindicate [their] unwaivable rights in an arbitration forum.' [Citation.]" (*Gentry v. Superior Court*, *supra*, 42 Cal.4th at p. 463, fn. omitted.)

The problem Arroyo faces is that he made no factual showing on the *Gentry* elements, even though his memorandum of points and authorities emphasized the continuing viability of *Gentry.* Accordingly, Arroyo now argues that we should remand for a determination of whether the application of the *Gentry* factors invalidates the waiver provision.

We decline the invitation. Arroyo was well aware of the *Gentry* issue, and his failure to present the necessary factual evidence to the trial court means that he failed to meet his burden of proof to show that the petition for arbitration should be denied.

Secondly, as we have found, the arbitration agreement was silent on the question of class arbitration. Accordingly, *Stolt-Nielsen* applies. The case holds that a class action claim cannot be arbitrated unless there is "a contractual basis for concluding that the party *agreed* to do so." (*Stolt-Nielsen S.A. v. AnimalFeeds International Corp., supra*, 130 S.Ct. at p. 1775.) There was no such contractual basis here, and it is clear from Arroyo's own declaration that one could not be shown on remand.

Third, in *Truly Nolen*, the court did remand for a determination of the threshold issue of whether there was an implied agreement to authorize class arbitration, but it did not remand for further consideration of the *Gentry* factors. (*Truly Nolen, supra*, 208 Cal.App.4th at p. 516.)

Thus, even assuming that *Gentry* survives until our Supreme Court declares otherwise, the assumption does not help Arroyo. "Even if *Gentry* has not been overruled, in opposing Kinecta's motion to compel arbitration and to dismiss class claims, Malone had to provide evidence of the four *Gentry* factors. Plaintiff has the burden of establishing that the arbitration provision (here, limiting arbitration to bilateral arbitration) is invalid by making a factual showing of the four *Gentry* factors. [Citation.] The record shows that Malone provided no evidence as to any of the four *Gentry* factors required to support a trial court's determination that the arbitration should proceed as a class action arbitration. Thus there is no evidence, and no substantial evidence, that plaintiff had established a factual basis that would require a declaration that the arbitration agreement was unenforceable. [Citation.] [¶] Because there are no grounds

23

to declare the arbitration agreement unenforceable and because the arbitration provision contained no agreement to classwide arbitration, Kinecta argues that *Concepcion* and *Stolt-Nielson* require reversal of the order denying its request to dismiss class claims from Malone's complaint. We agree." (*Kinecta Alternative Financial Solutions, Inc. v. Superior Court, supra*, 205 Cal.App.4th at p. 517.)

"[T]he court in *Gentry, supra*, 42 Cal.4th at page 446, required a factual showing under the four-factor test established in that case. Plaintiff, however, made no such showing in opposing the petition to compel arbitration. Thus, there was no evidence, much less substantial evidence, supporting the trial court's finding that under *Gentry*, plaintiff had established a basis not to enforce the class action waiver. As a result, we reverse the trial court's ruling invalidating the class action waiver." (*Brown v. Ralph's Grocery Co., supra*, 197 Cal.App.4th at p. 497.)

We therefore agree with Riverside that *Gentry* is inapplicable here because there was no evidence that the *Gentry* factors have been met. This is a failure of proof which precludes reliance on *Gentry*.

## X

## SUMMARY

We summarize our resolution of the issues raised by the parties as follows:

1.     While the trial court did not expressly find the existence of a contract to arbitrate, it impliedly found there was an arbitration agreement, albeit an unenforceable one.

24

2.     The arbitration agreement was not unconscionable because, although it was clearly a contract of adhesion, the trial court did not find substantive unconscionability. Arroyo failed to establish substantive unconscionability and therefore failed to meet his burden of proof.  The arbitration agreement is therefore valid and enforceable.

3.     The arbitration agreement did not expressly provide that class action claims were arbitrable.  Such claims are not impliedly arbitrable since the parties did not specifically agree to them.  (*Stolt-Nielsen S.A. v. AnimalFeeds International Corp., supra*, 130 S.Ct. at p. 1775.)

4.     If the arbitration agreement was interpreted to allow class action arbitration in this case, any such provision would be preempted by the FAA.  The trial court erred in failing to apply the holdings of *AT&T Mobility*, *supra*, 131 S.Ct. 1740 to this case.

5.     Although we discern a strong argument for preemption, we assume arguendo that *Gentry* remains good law until it is expressly overruled by our Supreme Court.  Nevertheless, we agree with Riverside that Arroyo has not met its burden of proof by making the factual showing required by *Gentry*.

We conclude that Riverside has shown the existence of a valid enforceable arbitration agreement.  (§ 1281.)  Arroyo has not shown that the arbitration agreement is unenforceable under general principles of unconscionability.  Arroyo has also failed to show that the parties agreed, expressly or impliedly, to arbitration of class action claims. Even assuming that *Gentry* survives *AT&T Mobility*, as Arroyo argues, he has not met the factual burden of proof required by *Gentry*.

25

The trial court therefore erred in denying Riverside's petition to compel arbitration.

## XI

## DISPOSITION

The judgment is reversed, and the case is remanded with directions to enter an order granting Riverside's petition to compel arbitration on an individual basis. Appellant shall recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS.

RICHLI _____
                                                    J.

We concur:

HOLLENHORST _____
                 Acting P. J.

KING _____
                            J.