Filed 12/22/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ANN WILLIAMS et al., | H049177 |
| Plaintiffs and Respondents, | (Santa Cruz County Super. Ct. No. 20CV01064) |
| v. | |
| WEST COAST HOSPITALS, INC., | |
| Defendant and Appellant. | |

Code of Civil Procedure sections 1281.97 and 1281.98[1] provide that a company or business pursuing arbitration of a dispute under a predispute arbitration agreement is in material breach and default of that agreement—thereby waiving its right to arbitrate—if it fails to timely pay its share of arbitration fees. Among the consumer's potential remedies for this material breach is to eschew arbitration and litigate. This appeal by defendant West Coast Hospitals, Inc. (West Coast), calls for us to decide (1) whether sections 1281.97 or 1281.98 required plaintiffs Ann Williams, John Williams, and Paul Williams to first obtain an arbitrator's determination of West Coast's default before returning to the trial court; and (2) whether these statutory provisions apply only to mandatory predispute arbitration agreements.[2] Because nothing in the statute authorizes

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] Because plaintiffs share a surname, we refer to them individually using their first names.

the restrictive interpretation that West Coast posits, we affirm the trial court's order permitting the resumption of litigation.

## I.    BACKGROUND

West Coast does business as Valley Convalescent Hospital, which admitted Ann as a resident in November 2018 to recover from a hip surgery. The following February, Valley Convalescent discharged Ann to an assisted living facility, where she died five days later.

John, Ann's son, initiated the present action against West Coast in his individual capacity and in his representative capacity as Ann's successor in interest and as his brother Paul's guardian ad litem. Plaintiffs alleged that Ann, unable due to dementia to communicate her need for nutrition or hydration, lost nearly forty pounds and became severely dehydrated at Valley Convalescent, resulting in acute and ultimately fatal renal failure. Plaintiffs alleged that West Coast "watch[ed] [Ann] waste away," "bill[ing] her Medicare A plan until her eligibility expired and then, when profitability was no longer available, . . . dumped her on the doorstep of a non-medical Assisted Living Facility, misrepresenting to the family and facility that [Ann] was stable and healthy enough to be suitable for the transfer." Plaintiffs alleged five causes of action against West Coast: (1) elder abuse; (2) violation of the Patient's Bill of Rights; (3) constructive fraud; (4) fraud by concealment; and (5) wrongful death.

West Coast moved to compel arbitration. In support of its motion, West Coast submitted an arbitration agreement that John had signed on Ann's behalf. According to its caption, the arbitration agreement was "Not Part of Admission Agreement," and residents were "not . . . required to sign [it] as a condition of admission."

The trial court granted the motion in part, compelling arbitration of Ann and John's claims but not Paul's claims, which the court stayed. The next day, the court entered a stipulated order submitting the entire action to arbitration.

2

Defense counsel contacted the arbitration provider to open the arbitration proceeding. The arbitration provider later notified the parties that the filing fee remained outstanding and set a deadline for payment. Plaintiffs timely paid their portion of the filing fee. West Coast did not timely pay the balance.

More than 30 days after the deadline, citing section 1281.98, plaintiffs filed in the trial court a motion to vacate the stay and an election to withdraw from arbitration on the ground that West Coast had to that point failed to pay the arbitration fees. West Coast belatedly paid its share of the arbitration fees that same day. The trial court granted plaintiffs' motion. West Coast timely appealed.

## II. DISCUSSION

In West Coast's view, a consumer seeking relief from a predispute arbitration agreement under section 1281.98 must first submit to the arbitrator the question of whether the drafting party has defaulted within the meaning of the statute. West Coast posits that the trial court lacked jurisdiction to act on any contrary interpretation. Alternatively, West Coast asserts that the statutory default provisions apply only to mandatory arbitration clauses. Independent of these questions of law, West Coast also asserts for the first time on appeal that the parties agreed to be bound by an enforceable delegation clause, likewise requiring the arbitrator to decide the application of section 1281.98 in the first instance.[3] As a matter of appellate process, we reject plaintiffs' contention that the order at issue is not appealable, but we decline to reach West Coast's forfeited claim as to the enforceability of any delegation clause. On the

---

[3] West Coast did not raise federal preemption on appeal. (Compare *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 635-646 (*Gallo*) [rejecting preemption challenge]; with *Belyea v. GreenSky, Inc.* (N.D. Cal. Oct. 26, 2022) ___ F.Supp.3d ___, 2022 WL 14965532, at pp. *6-*9, 2022 U.S. Dist. LEXIS 195077, at pp. *13-*23 [sustaining preemption challenge].) Accordingly, we do not address the issue. (See, e.g., *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 69, 72; *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.)

merits of West Coast's preserved claims, we conclude that the statute empowers a consumer otherwise subject to a voluntary predispute arbitration agreement to unilaterally withdraw from the arbitration upon the drafting party's failure to pay contractually required arbitration fees.

## A.  *Appealability*

Dispensing first with plaintiffs' contention that the trial court's order is not appealable, we conclude that it is, notwithstanding our recognition of the Legislature's intention to secure prompt dispute resolution, whether in arbitration or in litigation.[4]

"The right to appeal is wholly statutory." (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5.)  As relevant here, "[a]n aggrieved party may appeal from" "[a]n order dismissing or denying a petition to compel arbitration." (§ 1294, subd. (a).)  Although the trial court's order does not fall neatly within the plain language of section 1294, subdivision (a), courts have permitted appeals from orders that are the "functional equivalent" of orders denying a petition to compel arbitration.  (*Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 99-100 (*Henry*) [order staying arbitration is appealable, as a functional equivalent of an order denying a petition to compel arbitration]; *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 655 (*MKJA*) [an order declaring arbitration provisions unenforceable was the functional equivalent of an order denying a petition to compel arbitration].)  "[A]n order vacating an order compelling arbitration is the functional equivalent of an order denying a petition to compel arbitration in the first place because both divert a case into court

---

[4] As Plaintiffs concede, even if we were to determine that the trial court's order is not appealable, we may treat West Coast's appeal as a petition for writ of mandate. (*Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 698 ["A purported appeal from a nonappealable order may be considered to be a petition for an extraordinary writ if (1) the briefs and record . . . contain in substance all the elements [required] for an original mandate proceeding and (2) there are extraordinary circumstances justifying the exercise of discretionary power"].)

rather than arbitration." (*Gallo*, *supra*, 81 Cal.App.5th at p. 633 [holding that this functional equivalency supports reviewing the former under the de novo standard applicable to the latter].)

Against this conclusion, plaintiffs rely on *Wells Fargo Bank, N.A. v. The Best Service Co., Inc.* (2014) 232 Cal.App.4th 650 (*Wells Fargo*) and *Gastelum v. Remax Internat., Inc.* (2016) 244 Cal.App.4th 1016 (*Gastelum*). Both cases are distinguishable. In *Wells Fargo*, the defendants had not made "any effort . . . to compel plaintiff to arbitrate his claims," and had repeatedly claimed that its motion to stay litigation pending mediation and arbitration was not a petition or motion to compel arbitration. (*Wells Fargo*, *supra*, 232 Cal.App.4th at pp. 652, 654-655.) In *Gastelum*, the trial court denied the defendant supervisor's motion to compel arbitration but stayed the litigation of the plaintiff employee's claims against the supervisor in view of the plaintiff's agreement that her claims against defendant Remax, her employer, were subject to a predispute arbitration provision. (*Gastelum*, *supra*, 244 Cal.App.4th at p. 1018.) After the arbitration was dismissed for Remax's refusal to pay fees, the trial court granted plaintiff's motion to lift the stay of the litigation against both Remax and the supervisor. (*Ibid*.) On appeal, the court held that the request to lift the stay was not itself an appealable order. (*Ibid*.) In *Gastelum*, the arbitrator had already dismissed the arbitration and there was no pending cross-motion to compel resumption of the arbitration. (*Id*. at pp. 1020-1021.) Thus, the trial court's order lifting the stay neither vacated an order compelling an arbitration nor denied a renewed attempt to compel arbitration—the arbitration had concluded without a decision on the merits as a result of the arbitrator's dismissal. (*Id*. at pp. 1018, 1020-1023.)

Here, the trial court determined that West Coast's failure to pay the contractually mandated arbitration fees constituted a material breach of the arbitration agreement and a waiver of the right to compel plaintiffs to arbitrate. Because that determination of material breach and waiver operated as a complete defense to West Coast's enforcement

5

of the arbitration agreement, it is a functional equivalent of an order denying a petition to compel arbitration. (See *MKJA*, *supra*, 191 Cal.App.4th at p. 655; *Gallo*, *supra*, 81 Cal.App.5th at p. 633.) The order is therefore appealable under section 1294, subdivision (a), and we accordingly address its merits.

**B.** ***Withdrawal from Arbitration under Sections 1281.97 and 1281.98***

"[I]n construing a statute, we ascertain the Legislature's intent in order to effectuate the law's purpose." (*Green v. State of California* (2007) 42 Cal.4th 254, 260.) "We must look to the statute's words and give them their usual and ordinary meaning." (*Ibid.*) "The statute's plain meaning controls the court's interpretation unless its words are ambiguous." (*Ibid.*) "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

Sections 1281.97 and 1281.98 each prescribe procedures for payment and remedies for nonpayment of arbitration fees and costs by "the drafting party," i.e., "the company or business that included a predispute arbitration provision in a contract with a consumer or employee" (§1280, subd. (e)). Although all parties in their briefing consistently cite to section 1281.98, which governs the payment of fees and costs "during the pendency of the arbitration proceeding" (see § 1281.98, subd. (a)(1)), the fees West Coast failed to pay were those required "to initiate an arbitration proceeding" and are therefore subject to section 1281.97. The procedures and remedies under both provisions are "largely parallel," however, and require no different analysis. (See *Gallo*, *supra*, 81 Cal.App.5th at p. 633, fn. 4.)

Both sections provide that a drafting party who fails in its obligation to pay fees and costs required to initiate or continue the arbitration within 30 days after the due date is in "material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a

6

result of the material breach." (§ 1281.98, subd. (a)(1); see also 1281.97, subd. (a)(1).) Consequently, even where an arbitration has commenced, "the employee or consumer may *unilaterally* elect[,]" among other alternatives, to "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." (§ 1281.98, subd. (b)(1), italics added.)[5] We perceive no ambiguity in the Legislature's description of the consumer's choice as unilateral or in its resort to the language of "material breach," "default," and "waiver" in giving legal consequence to the drafting party's failure of timely payment.

Even while articulating these distinct but overlapping theories by which the employee or consumer may regain choice of forum, the Legislature was notably silent as to any threshold formalities of the sort West Coast hypothesizes. Nothing in the plain language of section 1281.98 purports to condition the consumer's unilateral election upon an initial arbitral determination of breach. Nor does anything in section 1281.98's concrete definition of breach, default, and waiver require such a determination: at issue is payment, or not, by a specified date, comparable to the failure of a litigant to pay jury fees or to timely file an answer, which are typically matters of ministerial record keeping rather than adjudicative factfinding.

Instead of requiring an initial determination of default by anyone other than the consumer, the statutory scheme ensures that the consumer's unilateral election designates a forum for determining the further consequences of the default. If the consumer elects to proceed in court to commence or resume litigation, the consumer must, as plaintiffs did here, seek vacatur of a prior order compelling arbitration and staying the litigation, or

_____

[5] The inclusion in section 1281.98 of the word "unilaterally"—excluded from section 1281.97—suggests that the Legislature intended to forestall the argument that the pendency of an arbitration required the consumer to secure arbitral approval of the consumer's chosen remedy. For matters subject to section 1281.97, where no arbitration has commenced, there was no need for the Legislature to specify that the consumer's election of remedies is unilateral.

face the drafting party's motion to compel arbitration notwithstanding its nonpayment. (§ 1281.98, subd. (b)(1); see also § 1281.97, subd. (b)(1).) If the consumer elects to proceed with the arbitration by paying the drafting party's delinquent arbitration fees, the consumer must necessarily persuade the arbitrator that it has a right to the inclusion of the fees in the final award. (§ 1281.98, subd. (b)(4).) Similarly, if the consumer elects to petition a court to require the drafting party to pay the arbitration fees, the consumer must necessarily persuade the court that it is entitled to compel the drafting party to pay such fees under the statute. (§ 1281.98, subd. (b)(3); see also § 1281.97, subd. (b)(2).) Finally, if the consumer elects to proceed with the arbitration without the payment of fees, that election is expressly conditioned on the voluntary agreement of the arbitrator, who would be granted a statutory right to a collection action against the drafting party. (§ 1281.98, subd. (b)(2).) Thus, we see no hint from the Legislature of any requirement for consumers to first seek a purely ministerial determination from the arbitrator before making the election the Legislature has empowered them to make unilaterally.

Although the clarity of the statute's text obviates the need for further inquiry, we observe that the legislative history is consistent with the statute's plain language. In enacting sections 1281.97 and 1281.98, the Legislature intended to prevent drafting parties from abusing their obligation to pay arbitration fees as a means of "severely prejudic[ing]" employees and consumers in the vindication of their rights by "hinder[ing] the efficient resolution of disputes." (See Stats. 2019, ch. 870, § 1(c)-(d).) The Legislature expressed its "intent" "to affirm" "that a company's failure to pay arbitration fees pursuant to a mandatory arbitration provision constitutes a breach of the arbitration agreement and allows the non-breaching party to bring a claim in court." (Stats. 2019, ch. 870, § 1(f).)

The committee reports underscore these stated purposes. The author and sponsors intended the bill to provide a procedural recourse to employees and consumers who were required to arbitrate their disputes, but whose arbitrations were being strategically

8

delayed by companies that either failed to pay the initial filing fee or failed to pay fees during the course of the arbitration. (Sen. Jud. Com., Rep. on Sen. Bill No. 707 (2019-2020 Reg. Sess.) Apr. 11, 2019, pp. 6, 9.) The Assembly Committee on Judiciary report went further, explaining that "this bill provides that if a drafting party fails to pay any costs or fees associated with the arbitration within 30 days of the passing of the due date, *the consumer or employee is free to remove the matter to court*, or continue with arbitration and seek recovery of the costs and fees." (Assem. Com. on Jud., Analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended May 20, 2019, p. 1, italics added.)

As the Legislature's stated purpose supports our giving effect to the statute's plain language, we conclude that employees and consumers may make their "unilateral" election under section 1281.98, subdivision (b) upon learning of the default, without first seeking approval from the arbitrator. Fundamentally, the purpose of the statute is to incentivize timely payment and to provide procedural redress for employees and consumers whose arbitration is delayed by the drafting party's nonpayment. Requiring the employees or consumers to remain in arbitration to secure a default—from an arbitrator who did not receive timely payment and may still remain unpaid—invites the very abuse that the statute is intended to eradicate. We decline to impose this burden on the intended beneficiaries of the statute, even if they may independently elect to submit the issue of default to the arbitrator.

## C.    *The Trial Court's Jurisdiction*

West Coast alternatively asserts that the limits on trial court jurisdiction over the contractual arbitration deprived the trial court here of authority to vacate its own prior order. This challenge to the trial court's subject matter jurisdiction presents a pure issue of law, which we review de novo. (*Tearlach Resources Ltd. v. Western States Internat., Inc.* (2013) 219 Cal.App.4th 773, 780.)

Under West Coast's theory of the statute, the commencement of arbitration divests the trial court of jurisdiction to do anything other than confirm, vacate, or correct an

9

arbitration award, unless and until the arbitrator grants plaintiffs leave to withdraw from arbitration. By vacating its prior order, West Coast maintains, the trial court effectively dismissed the arbitration. West Coast's argument misconstrues the nature of trial court's order and conflates two distinct aspects of the trial court's continuing jurisdiction.

Contractual arbitration "has explicit statutory sanction in California" but "is in no sense . . . a usurpation or ouster of the judicial power vested in the trial court by our Constitution." (See *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1795 (*Brock*), citing *Snyder v. Superior Court* (1937) 24 Cal.App.2d 263, 267.) As courts of general jurisdiction, California's superior courts are generally empowered to resolve the legal disputes that are brought to them. (*California Gun Rights Foundation v. Superior Court* (2020) 49 Cal.App.5th 777, 788.) The Legislature may impose reasonable restrictions on the fundamental jurisdiction of the courts, but we will not infer a legislative intent to deprive superior courts of authority in a particular area, absent clear indication of such an intent. (*Ibid*.)

The contractual right to compel arbitration is not self-executing: the party asserting its right may do so by petition or affirmative defense in the trial court and by seeking a stay of judicial proceedings. (*Brock*, *supra*, 10 Cal.App.4th at pp. 1795-1796.) Once a court grants a petition to compel arbitration and stays the litigation, the court nonetheless retains (1) "vestigial jurisdiction over the action at law," which then "sits in the twilight zone of abatement," and (2) a "separate, limited jurisdiction over the contractual arbitration." (*Id.* at p. 1796.)

The trial court's limited jurisdiction over the contractual arbitration, to be sure, does not extend to the power to dismiss the arbitration proceedings, once commenced. (*Brock*, *supra*, 10 Cal.App.4th at pp. 1801-1802.) But the trial court neither dismissed the arbitration proceedings nor relied on its limited jurisdiction over the arbitration itself. Having announced their election to withdraw from the arbitration, plaintiffs by their motion to vacate the stay of the litigation properly invoked the court's vestigial

10

jurisdiction over the action at law.  This "vestigial jurisdiction" extends to determining whether the arbitration proceedings resulted in an award on the merits, in which case "the action at law should be dismissed because of the res judicata effects of the arbitration award"; if it did not, then "*the action at law may resume to determine the rights of the parties*[.]"  (*Brock*, *supra*, 10 Cal.App.4th at p. 1796, italics added; see also *Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487 (*Titan*).)  The trial court merely confirmed that arbitration had concluded without an award on the merits—as a result of plaintiffs' unilateral exercise of their statutory rights—then acted within its jurisdiction to vacate its own prior order and allow the action at law to emerge from "the twilight zone of abatement."  (*Brock*, *supra*, 10 Cal.App.4th at p. 1796; see also *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1096 (*Gaines*) [citing *Brock* with approval].)

The cases on which West Coast relies compel no contrary result.  West Coast has cited several decisions predating section 1281.97 et seq. for the proposition that the court retains only its vestigial jurisdiction, and the limited jurisdiction conferred by statute, "[a]bsent an agreement to withdraw the controversy from arbitration."  (See *Titan*, *supra*, 29 Cal.App.4th at p. 487; see also *Byerly v. Sale* (1988) 204 Cal.App.3d 1312, 1315.)  These decisions, however, do not purport to limit the Legislature's authority to modify the statutory scheme by which a party may effect a withdrawal and invoke the vestiges of trial court jurisdiction.  Section 1281.98 established a narrow but unilateral entitlement to withdraw from arbitration.  The trial court's review of the withdrawal is within its vestigial jurisdiction.  Even if the matter were not within the trial court's vestigial jurisdiction, the Legislature's unambiguous provision for employees and consumers covered by section 1281.98 to unilaterally withdraw from arbitration and proceed in a court of appropriate jurisdiction compels the conclusion that the Legislature intended courts to exercise jurisdiction over such proceedings, as a matter of positive law.

11

Absent any California decisions interpreting the statute in its favor, West Coast relies on two federal decisions, *Sink v. Aden Enters., Inc.* (9th Cir. 2003) 352 F.3d 1197 (*Sink*) and *Farmer v. Airbnb, Inc.* (N.D. Cal. June 1, 2021) 2021 WL 4942675, 2021 U.S. Dist. LEXIS 206791 (*Farmer*). Neither persuades us that the trial court lacked jurisdiction to enter the challenged order.

In *Sink*, the Ninth Circuit held that it was "not clearly erroneous" for the district court to confirm an arbitrator's determination that the party required to pay the costs of arbitration had defaulted in arbitration by failing to do so. (*Sink*, *supra*, 352 F.3d at pp. 1199-1200.) Because the party was in default, the district court was no longer required to compel the parties to arbitration. (*Id*. at pp. 1201-1202.) We do not read *Sink* to require the district court to cede to the arbitrator the question of default in the first instance—the Ninth Circuit reviewed the district court's factual finding, which was in turn based on the arbitrator's determination, and determined that the district court did not err under the applicable standard of review. (*Id.* at pp. 1199-1200.) *Sink* does not help West Coast because it addresses a federal district court's review of an arbitral entry of default, not a trial court's jurisdiction to decide whether to resume court proceedings after a party abandons arbitration, whether under the present statutory scheme or otherwise. (*Id.* at pp. 1199-1202.) "[C]ases are not authority for propositions not considered." (*People v. Casper* (2004) 33 Cal.4th 38, 43.)

We further reject West Coast's contention that the Legislature intended to derive such a procedure from *Sink*. The Legislature stated only its intention to affirm *Sink's* ultimate holding "that a company's failure to pay arbitration fees pursuant to a mandatory arbitration provision constitutes a breach of the arbitration agreement and allows the non-breaching party to bring a claim in court." (Stats. 2019, ch. 870, § 1(f); see also *id*. at § 1(e).) Its reference to *Sink* accordingly does not persuade us that the Legislature intended to require employees or consumers to move the arbitrator for entry of default.

12

In *Farmer*, a district court held that because the arbitration agreement between the parties delegated the question of arbitrability to the arbitrator, the parties had agreed to submit the section 1281.98 issue to the arbitrator as a " 'gateway question [of arbitrability].' " (*Farmer*, *supra*, 2021 WL 4942675, at *1, 2021 U.S. Dist. LEXIS 206791, at p. *3.)  We acknowledge that, on a clear and unmistakable showing, a court may determine that the parties have agreed to arbitrate "gateway" questions of "arbitrability" because they agreed to an enforceable delegation clause.  (*Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, 879 (*Najarro*).)  But, as detailed below, West Coast's reliance on *Farmer* is flawed in two fundamental respects:  (1) *Farmer* does not hold that the application of a delegation clause presents a jurisdictional issue; and (2) West Coast did not argue in the trial court, or in any substantial sense on appeal, that the parties in the present arbitration agreement effectively delegated the section 1281.98 issue to the arbitrator.

We reject West Coast's contention that the delegation clause presents an issue of jurisdictional dimension.  As West Coast implicitly acknowledged by its initial motion to compel, California courts undisputedly have jurisdiction to order parties to arbitration in the first instance.  (See, e.g., § 1281.2; *Brock*, *supra*, 10 Cal.App.4th at p. 1795.)  While the parties may agree to delegate a dispute within a court's jurisdiction to an arbitrator, the contractual right to an arbitration is waivable—the parties' agreement does not of itself divest the court of jurisdiction.  (See § 1281.2; *Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 485.)  Rather, when the court enforces an agreement to arbitrate, its jurisdiction merely abates.  (See *Brock*, *supra*, 10 Cal.App.4th at pp. 1795-1796; *Gaines*, *supra*, 62 Cal.4th at p. 1096; see also *People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 770-771 [discussing stays pursuant to a plea in abatement].)  The threshold issue of arbitrability is, in this respect, no different from any other dispute that the parties may agree to send to arbitration—the court has jurisdiction until it decides to defer the issue to the arbitrator pursuant to the

13

parties' waivable contractual rights; and even then it continues to hold the action in abatement.  (See *Brock*, *supra*, 10 Cal.App.4th at p. 1796.)

Thus, even if we assume that the parties did agree to delegate the section 1281.98 issue to the arbitrator, a contractual right to an arbitral resolution of that issue does not of itself divest the court of jurisdiction:  the parties may abandon—or forfeit—the contractual right and submit the matter to the court.  (See *In re Checking Account Overdraft Litigation MDL No. 2036* (11th Cir. 2012) 672 F.3d 1224, 1228 (*Checking Account Overdraft Litigation*) [holding that party waived its right to arbitrate the conscionability of the arbitration clause by asking the district court to decide the conscionability challenge, rather than invoking the delegation clause]; *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 515, fn. omitted (*Truly Nolen*) [citing *Checking Account Overdraft Litigation* with approval in holding that party "cannot now complain about the court's authority to rule on [certain] issues" where the party "fail[ed] to ask the court to defer [those issues] to the arbitrator"]; *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 771 (*Mendoza*) [holding "that Employers forfeited any right to have the arbitrator decide whether the parties have entered into a contract to arbitrate Mendoza's underlying claims by failing to preserve those claims in the trial court.  They also waived that right by fully litigating the question there and here."].)

Accordingly, to the extent West Coast contends that there was an enforceable delegation clause in its arbitration agreement that required the trial court, as a matter of contract enforcement, to defer the section 1281.98 issue to the arbitrator, West Coast has not preserved that contention for appeal.[6]

---

[6] Because we conclude that the delegation clause argument does not present a jurisdictional issue, the rule that the "lack of subject matter jurisdiction cannot be waived and may be raised at any time, even for the first time on appeal" does not impact this

14

In petitioning the trial court to compel arbitration, West Coast did not ask the trial court to defer the question of arbitrability under the agreement to the arbitrator—it called upon the trial court to decide the question of arbitrability and received a favorable result as to Ann and John. Indeed, West Coast states in its opening brief that the trial court found that its arbitration agreement was "valid and enforceable." In opposing plaintiffs' underlying motion, West Coast made no reference to any delegation clause. West Coast accordingly forfeited the issue by failing to raise it in the trial court. (See *Checking Account Overdraft Litigation*, *supra*, 672 F.3d at p. 1228; *Truly Nolen*, *supra*, 208 Cal.App.4th at p. 515; *Mendoza*, *supra*, 75 Cal.App.5th at pp. 768-771.)

We have discretion to permit parties to raise new issues in appellate briefing where the issue posed is a pure question of law based on undisputed facts and involves important questions of public policy. (See *Coleman v. Medtronic, Inc.* (2014) 223 Cal.App.4th 413, 428.) But the enforceability of a delegation clause is not a pure question of law. (See *Najarro*, *supra*, 70 Cal.App.5th at pp. 879-882 [finding delegation clause unenforceable based on fraud in the execution].) To the extent the enforceability of a delegation clause may in some instances be decided on undisputed facts in the appellate record, we are unable to presume that plaintiffs here—had West Coast properly raised this issue in the trial court—would have conceded such facts.

In its opening brief on appeal, West Coast offered a single-sentence assertion that the arbitration agreement "mandated that all questions regarding the enforceability and voidability of the arbitration agreement were to be decided by the arbitrator," with neither analysis of whether the delegation clause was enforceable nor any citation to authority supporting such analysis. West Coast has thus compounded its failure to preserve the claim in the trial court by failing to support any assertion that its arbitration agreement

portion of the analysis. (See *Alliance for California Business v. State Air Resources Bd.* (2018) 23 Cal.App.5th 1050, 1060 (*Alliance*).)

15

contained an enforceable delegation clause with reasoned argument and legal authority. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793; *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948; see also *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146, 153.) Accordingly, we need not decide whether a valid and enforceable delegation clause may require a consumer to present the section 1281.98 issue to an arbitrator.

**D.      *Application of Section 1281.98 to Voluntary Arbitration Agreements***

Section 1281.98 applies to "consumer arbitration[s]" and delineates the respective rights and obligations of "consumer[s]" and "drafting part[ies]." (§ 1281.98.) Although " '[c]onsumer' " and " '[d]rafting party' " are separately defined terms (§ 1280, subds. (c) and (e)), "arbitration" and "consumer arbitration" are not. West Coast argues that "consumer arbitration" should therefore be read, in light of the Legislature's express findings, to limit the application of section 1281.98 to arbitration under "mandatory" predispute arbitration agreements, excluding arbitration under "voluntary" predispute agreements. Because the arbitration agreement here was facially voluntary, West Coast contends that the statute is inapplicable.

Reviewing de novo West Coast's interpretation of the statute, we conclude that the Legislature intended no such limitation. (See *Alliance*, *supra*, 23 Cal.App.5th at p. 1060.) West Coast's proposed limitation is inconsistent with the statute's plain language. "When a term goes undefined in a statute, we give the term its ordinary meaning." (*De Vries v. Regents of University of California* (2016) 6 Cal.App.5th 574, 590-591 (*De Vries*).) "Consumer arbitration" is a composite of a defined term—consumer—and an undefined term—arbitration. Particularly in the context of the pertinent statutory scheme, arbitration is a process by which a dispute is resolved by an arbitrator, rather than by a court. (See §§ 1280, subds. (e), (g) & (h), 1282.) We take the ordinary meaning of "consumer arbitration," accordingly, to be arbitration involving a "consumer" and a controversy arising from the consumer's transaction with the drafting party, irrespective

16

of how the parties reached their predispute agreement to arbitrate.

Our construction accords with the Legislature's clear and overriding purpose in enacting the statutory scheme—to ensure timely dispute resolution by (1) deterring untimely payment of arbitration fees and (2) providing consumers and employees with a procedural mechanism to secure dispute resolution should the drafting party fail to timely pay arbitration fees. The focus of the statute is the fair and timely resolution of the dispute anticipated in the parties' arbitration agreement, not the means by which the drafting party secured the predispute agreement in the first place.

West Coast argues that its preferred definition of "consumer arbitration" is consistent with the definition of that term in the California Rules of Court governing ethical standards for neutral arbitrators in contractual arbitration, which limit the scope of that term to situations where the consumer was required to accept the arbitration provision. (See *Speier v. The Advantage Fund, LLC* (2021) 63 Cal.App.5th 134, 149, fn. 4 [citing definition]; *Jevne v. Superior Court* (2005) 35 Cal.4th 935, 954, fn. 6 [same].) But West Coast has given us no reason to believe that the Legislature intended to appropriate this definition of "consumer arbitration" for use in section 1281.98. The purpose for which the defined term "consumer arbitration" as used in the ethical standards is to delineate the cases in which certain disclosures are required. (See *Honeycutt v. JPMorgan Chase Bank, N.A.* (2018) 25 Cal.App.5th 909, 922-924; Cal. Rules of Court Ethics Standards for Neutral Arbitrators in Contractual Arbitration, stds. (2), (7)-(8) & (12).) If the Legislature had intended to use an expressly narrowed definition of the term applicable in the specialized context of ethical standards governing the single issue of disclosure, the Legislature would likewise have defined the term. (See *De Vries*, *supra*, 6 Cal.App.5th at pp. 590-591; *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2019) 42 Cal.App.5th 148, 154.)

We acknowledge that the Legislature declared that strategically failing to pay arbitration fees and costs, which "severely prejudice the ability of employees or

17

consumers to vindicate their rights[,] . . . is *particularly* problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes." (Stats. 2019, ch. 870, § 1(d), italics added.) But the Legislature did not declare that the strategic delay of arbitration through non-payment of fees and costs is "only" problematic and unfair where it is achieved by the party that imposed the arbitration obligation predispute. That an abusive practice is more acutely prejudicial in the context of a mandatory predispute agreement than a voluntary one does not detract from the Legislature's broader purposes. To adopt West Coast's position would be graft onto section 1281.98 an exception that lacks any textual support to permit a practice that the Legislature determined was problematic and unfair.

We also acknowledge the record evidence that West Coast's belated payment was unintentional and that the ensuing delay amounted to a few days. But nothing in section 1281.98 as drafted depends on the intent or good faith of a particular drafting party in a specific case. (See *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 775-778 [addressing section 1281.97]; *De Leon v. Juanita's Foods* (Nov. 23, 2022) ___ Cal.Rptr.3d ___, 2022 WL 17174498, at pp. *1, *4, *6-*9, 2022 Cal.App. LEXIS 974, at pp. *2, *8, *13-*22 (*De Leon*).) To further its stated purpose, the Legislature in enacting sections 1281.97 and 1281.98 chose to neither require nor permit an inquiry into the reasons for a drafting party's nonpayment. (See § 1281.98; Assem. Com. on Jud., Analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended May 20, 2019, pp. 9-10 [acknowledging that material breach and sanction provisions are "strict" and "unforgiving"].) It is within the Legislature's purview to make a civil remedy available, as a matter of policy, without regard to fault. (See, e.g., *Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, 821-822 [discussing a strict liability statute].)

The Legislature similarly chose not to condition the remedies of sections 1281.97 and 1281.98 on litigation of the voluntary or mandatory character of the predispute execution of the arbitration agreement. To limit the scope of the statute to mandatory

arbitration agreements would, furthermore, invite ancillary litigation of voluntariness that would undermine the purpose of the statute. (See *De Leon*, *supra*, ___ Cal.Rptr.3d at p. ___, 2022 WL 17174498, at p. *9, 2022 Cal.App. LEXIS 974, at pp. *21-*22.) It is more consistent with the statutory purpose to interpret the statute to prohibit the "problematic and unfair" practice of delaying arbitration by failing to timely pay required fees in all arbitrations between a drafting party and a consumer, without analyzing whether the particular drafting party in question engaged in all of the behaviors that the Legislature determined were problematic. We will not disturb the balance struck by the Legislature. Accordingly, we conclude that whether an arbitration agreement was "mandatory" or "voluntary" in its execution is immaterial to the section 1281.98 analysis.

### III.   DISPOSITION

The order lifting the stay and permitting the resumption of litigation is affirmed. Respondents are entitled to their costs on appeal.

 

 

 

 

                        _____

                        LIE, J.

 

 

WE CONCUR:

 

 

_____

GREENWOOD, P.J.

 

 

_____

GROVER, J.

 

 

 

*Williams et al. v. West Coast Hospitals, Inc.*
H049177

Trial Court:                                          Santa Cruz County Superior Court
                                                      Superior Court No.:  20CV01064


Trial Judge:                                          The Honorable Timothy R. Volkmann



Attorneys for Defendant and Appellant       Lewis Brisbois Bisgaard & Smith
West Coast Hospitals, Inc.:
                                                      Jeffry A. Miller
                                                      Daniel R. Velladao
                                                      Reuben B. Jacobson
                                                      Tracy D. Forbath



Attorneys for Plaintiffs and Respondents     Scruggs, Spini & Fulton
Ann Williams et al.:
                                                      G. Dana Scruggs
                                                      Samuel Forbes-Roberts


*Williams et al. v. West Coast Hospitals, Inc.*
H049177